GREGORY'S BOOK STORE, INC. *et al. vs.* PROVIDENCE PUBLIC LIBRARY *et al.*

DECEMBER 30, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

RATHBUN, J.  This is a bill in equity brought by citizens, who are taxpayers engaged in the rental of books, against the Providence Public Library, the State Treasurer and Auditor, and the State Board of Education to enjoin the payment to said library of any money of the State under the provisions of Section 9, Chapter 65 of the General Laws of 1923.  The case is before us on the complainants' appeal from a decree of the Superior Court dismissing the bill.

Said section provides that the State Board of Education may cause to be paid annually to and for the use of each free public library in the State a sum, not exceeding $500, to be used in the purchase of books.  Section 10 provides that:  "The board of education shall from time to time establish rules prescribing the character of the books which shall constitute such a library as will be entitled to the benefits conferred by the preceding section, regulating the management of such library so as to secure the free use of the same to the people of the town and neighborhood in which it shall be established, and directing the mode in which the sums paid in pursuance of this chapter shall be expended.  No library shall receive any benefit under the foregoing provisions, unless such rules shall have been complied with by those in charge thereof, nor until they shall have furnished to said board satisfactory evidence of the number and character of the books contained in said library."  In 1875 the State Board of Education adopted the following rule which is still in force:  "The trustees, or Board of management of each library claiming aid under the provisions of Chapter 51 of the General Laws shall show to the satisfaction of the State Board of Education that the free use of all the advantages of the library is granted to all citizens of a suitable age" etc.  .  .  .

For many years said library has been granted State aid by the State Board of Education and no charge was made

for the use of any books until 1922 when said library established a collection of duplicate books on recent fiction. For the use of these duplicate books, when taken from the library, a charge of two cents a day is made. The small sum of money received from the State has been used for the purchase of children's books and not for the benefit of the duplicate collection.

The complainants, seeking to put an end to the competition with their business, are asking that State aid be withheld from said library so long as it continues to maintain this duplicate pay-system.

Said Section 9 authorizes the granting of State aid to only "free public" libraries. The complainants contend (1) that said library is not "public" because it is not owned by a municipality; (2) that said library is not free so long as it exacts a charge for any of its books; (3) that said Board in granting State aid to said library is violating the Board's own rule, made by authority of said Section 10, which provides that it must be shown to "the satisfaction of the State Board of Education that the free use of all the advantages of the library is granted to all citizens of a suitable age", etc., and the complainants call our attention to said Section 10 which provides that: "No library shall receive any benefit under the foregoing provisions, unless such rules shall have been complied with".

So far as we have been able to ascertain the legislature has at no time defined "a free public library". General Laws, 1923, Chapter 47, Section 5, entitled "Of the Powers of, and of Suits By and Against, Towns", authorizes towns and cities to establish and maintain "free public libraries". Section 6 of said chapter authorizes cities and towns to appropriate money to assist in the maintenance of a "free library" within, but not established by, the municipality and has distinguished the two libraries by designating the one established by the municipality as a "free public library" and the other as a "free library", but we are of the

opinion that it was not the intention of the legislature in adopting Section 9 of said Chapter 65 to authorize State aid to only such free libraries as are owned by municipalities. There is nothing contained in said Chapter 65 to indicate that the legislature used the phrase "free public library" in any other than the popular sense, that is, a library the use of the books of which are free to the public. We are the more inclined to accept this construction by reason of the fact that the State Board of Education long ago adopted this construction, has for many years granted State aid to a large number of free libraries not owned by municipalities and has annually made a report to the legislature. If said Board in adopting this construction had failed to carry out the intention of the legislature it would most probably in one of the numerous revisions which have been made have amended the statute in question. In *U. S.* v. *Hermanos y Compania*, 209 U. S., the court, at page 339, used the following language: "We have said that when the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution. *Robertson* v. *Downing*, 127 U. S. 607; *United States* v. *Healey*, 160 U. S. 136. And we have decided that the reënactment by Congress, without change, of a statute, which had previously received long continued executive construction, is an adoption by Congress of such construction. *United States* v. *Falk*, 204 U. S. 143, 152". See also *U. S.* v. *Finnell*, 185 U. S. at 247, and *U. S.* v. *Johnston*, 124 U. S. 236.

Is the State Board of Education without authority to grant State aid to said library by reason of the fact that the library makes a charge for the use of the books in the duplicate pay-collection when taken from the library? Of every book contained in the duplicate pay-collection there is in the main collection at least one copy which may be obtained by the public without charge. No charge is made for the use of the books in the duplicate pay-collection unless taken from the library. Probably all of the libraries receiving

State aid have certain books, such as books of reference, etc., which may not be taken from the library. It has not been suggested that the "free use" of said books is not secured "to the people of the town and neighborhood" etc. The purpose of the statute and the rule is that the State may, by rendering a small aid, increase the usefulness of libraries which are freely rendering a public service. The purpose of the statute is not to prevent libraries receiving State aid from, in any manner, competing with the business of the complainants. Suppose it should be held that said library, in order to obtain State aid, must permit all books in the duplicate pay-collection to be taken from the library without charge, what will be the result? Most of the books in said collection are books recently published for which there is, for a short time, a considerable demand. Before the unusual demand ceases the charge for rental usually pays for the cost of the book, which is thereafter placed in the free collection. If the library does not make a charge for the books in the duplicate pay-collection it cannot be expected that the library will continue to maintain this collection, by purchasing several duplicate copies of recent books, to satisfy a temporary popular demand. The result will be that the chances of a person obtaining, within a given time, the free use of a copy of one of these books will be greatly lessened and the purpose for which the statute and rule were adopted would be frustrated. Taking a common sense view of the problem it must be said that the "free use" of said library as required by the statute is secured to the public.

The Board in interpreting and applying the rule has found that the free use of all the "advantages" of the library is granted to the public. A literal interpretation of the rule would defeat the purpose for which the rule and statute were adopted. Such a result should be avoided if possible whenever the intention and purpose is clear. The statute unlike the rule, made by authority thereof, does not contain the word "advantages". Had the Board deemed it necessary,

in order to continue State aid to said library, it would undoubtedly have modified the rule by eliminating the words "of all the advantages".

A majority of the court think that the regulation of the Board permitting said library, while enjoying State aid, to maintain the duplicate pay-system was reasonable and within the power of the Board.

The complainants' appeal is dismissed, the decree appealed from is affirmed, and the cause is remanded to the Superior Court for further proceedings.

STEARNS, J., dissenting. In my opinion the appeal should be sustained and the respondents should be enjoined. The State Board of Education only has authority to grant State aid to a free public library of which the people of the neighborhood have free use (G. L., C. 65, Secs. 9, 10).

The first reference I find in the statutes to a "free public library" is in P. L., C. 668 (1867), which provides that property voters in any town or city, at any annual election may vote to impose a tax "for the foundation therein, of a free public library with or without branches, for all the inhabitants thereof and to provide suitable rooms therefor," under regulations to be prescribed by the town or city council; and thereafter such voters may annually vote a tax for the support of such free public library and may receive and manage any gifts for the establishment, increase or maintenance of any public library therein, to be under such regulations for its government, when they are not prescribed by the donor, as may be prescribed by the town or city council. In 1869 (P. L., C. 809) school districts, also adjacent towns by concurrent vote, were empowered to establish a free public library. At this time "public libraries" were already exempt by statute from taxation. (Rev. Stat. 1857, C. 37). In 1870 (P. L., C. 840) an additional exemption from taxation was granted to any property held for or by any "free public or incorporated library society." In 1872 (G. St., C. 38) the exemption was given to "any incorporated

library, society or any free public library or any free public library society," which is the provision now in General Laws, 1923, C. 58. In 1892 (P. L., C. 1068 now G. L. 1923, C. 54) town and city councils were given authority to accept in behalf of the town or city the gift of any library or funds to be maintained as a free public library; the act further provides that whenever any city or town shall establish or become possessed by gift of a free public library, the town or city council shall elect trustees who shall have the custody and control of such library and who shall make rules and regulations for the government of the library and the use of the books, "provided that no fee for the use of the books shall ever be exacted."

In 1920 (P. L., C. 1838 now G. L., C. 47, Sec. 6) cities and towns in addition to the existing right to make annual appropriations for the maintenance of free public libraries were authorized in a like manner to make an annual appropriation for the maintenance of any free library therein.

The Providence Public Library was incorporated (January, 1871) under the name of "The Board of Trustees of the Free Library, Art Gallery and Museum," to erect and maintain in the city of Providence a building suitable for and to provide the same with a free library, art gallery, etc. Subsequently (by act passed April 2, 1875, as amended in January, 1885) the corporate name was changed to "Providence Public Library"; the object of the corporation, as stated in this amendment, was to establish a public library. The corporation was authorized, in its discretion, to provide an art gallery, etc. The management and control of the affairs and property of the corporation were vested in a board of trustees composed of contributors to the corporation or persons nominated by them, with power in the board of trustees after their first organization to fill all vacancies thereafter occurring. In Section 3 the purchase of books provided for therein was declared by the amendment to be for a public library and not, as originally provided in the charter, for a free library. The library was incorporated by

special act of the legislature. Its management and control are entrusted to trustees appointed by individuals and it is given more extensive powers than the statutory free public library.

It thus appears that the legislature has often and designedly made a distinction between a *free library*, a *public library* and a *free public library*.

Assuming, however, that respondent library is a free public library within the meaning of the statute, I think it is prohibited from exacting a fee for the use of any of its books. In this respect it is subject to the same restriction as a town or city free public library. At the present time, although it is a public library, it is a part free, and a part pay, library. So long as it exacts a charge for the use of any of its books, it is not entitled, under the statute, to receive State aid.

VINCENT, J., concurs in the dissenting opinion of STEARNS, J.

*Waterman & Greenlaw, Edwin J. Tetlow, Charles E. Tilley,* for complainants.

*Green, Curran & Hart, Harold R. Semple,* for respondents.