DR. HERBERT J. GROVER, State Superintendent Department of PublicInstruction
The Madison Public Library recently began collecting a number of user fees and reserve charges for various materials and services. These include fees and charges for borrowing best seller books, framed pictures, 16 mm films, 16 mm film projectors, radios, screens, video cassettes and audio cassette players. Also, they include charges and fees for having books and materials put on reserve, and charges for using the meeting rooms in the library. You question the legality of these charges in light of section 43.52(2), Stats., which provides:
 Every public library shall be free for the use of the inhabitants of the municipality by which it is established and maintained, subject to such reasonable regulations as the library board prescribes in order to render its use most beneficial to the greatest number. The library board may exclude from the use of the public library all persons who wilfully violate such regulations.
In my opinion, this section renders only some of Madison Public Library's fees and charges invalid.
In answering your question, it is essential in my opinion to be mindful of the fact that the information explosion of recent years has expanded the library's traditional role as a lender of books. See Libraries' Financial Squeeze, 1979 Vol. 11 Editorial Research Reports 803 (1980). The interplay between technology and information has led libraries to venture into new, non-traditional areas such as offering computer services and maintaining and lending various kinds of audio and audiovisual equipment.
The first statutory section setting forth the principle of "free" public libraries, a principle now embodied in section43.52(2), was enacted in the 1800's. One can logically assume that, at that time, only traditional library services were offered. In interpreting section 43.52(2) and its intended scope, the historical context in which the free library principle was adopted must be considered. See Berns v. Wis. EmploymentRelations Comm., 99 Wis.2d 252, 265, 297 N.W.2d 248 (1980). In my opinion the Legislature intended, by means of the phrase "free for the use of," to ensure that patrons within a municipality would be given free access to the physical facilities *Page 88 
and the informational materials traditionally associated with a library. In my opinion, the phrase is not so broad as to mean that every new service provided by and every activity occurring within a library must be without charge. This conclusion finds support in Board of Education v. Sinclair, 65 Wis.2d 179,222 N.W.2d 143 (1974). There, the Wisconsin Supreme Court dealt with a constitutional provision mandating that public schools be "free and without charge for tuition." Wis. Const. art. X, § 3. The Court held that such language did not absolutely prohibit public schools from selling or charging fees for the use of textbooks and other items (pens, pencils, gym suits, band instruments).
While there is no definition of the term "library service" in the Wisconsin statutes, there is an instructive definition in the federal Library Services and Construction Act, 20 U.S.C. §§ 351-364. "Library Service" is defined as "the performance of all activities of a library relating to the collection and organization of library materials and to making the materials and information of a library available to a clientele." 20 U.S.C. § 351a(3). In 1978, the Attorney General of California dealt with the identical issue you have raised. Based on the federal definition of "library service," he formulated a test for determining whether a particular transaction is a "library service" that must be provided for free. I find the test to be a sound one and adopt it as a guideline for applying section43.52(2). The test is as follows:
 If the transaction involves the satisfaction, with library resources, of a patron's request for information (whether for educational, recreational or entertainment purposes), such transaction is a "library service." Other transactions, not involving the furnishing of information, though carried out by a library, would not be a "library service" . . . . Perhaps the essential distinction that is operative here, is between those services which are reflective of a library's inherent information providing function and those ancillary services which are not unique to libraries and which can be just as effectively provided in non-library settings. Examples of such non-library services might include the furnishing of meeting rooms, allowing the use of typewriters and copying machines, rental of audiovisual equipment, etc.
61 Op. Att'y Gen. 512 (California 1978). *Page 89 
Applying this guideline to the various charges and fees established by the Madison Public Library, it is my opinion that only the following may be imposed: charges for use of framed pictures, projectors, screens, audio cassette players, AM/FM radios and meeting and lecture rooms. In my opinion these are services which are tangential to a library's inherent information-providing function. The charges for borrowing 16 mm films and for holding materials on reserve are, in my opinion, charges for core "library services" and, as such, are prohibited.
In regard to charging for the borrowing of best seller books, I agree with the reasoning of Gregory's Book Store v. ProvidencePublic Library, 46 R.I. 283, 127 A. 150, 151, (1925). There, the court held that a library did not lose state aids, even in view of the statutory phrase "free public library," where it charged for the use of books in its duplicate pay collection. The court stated:
 Most of the books in [the duplicate pay] collection are books recently published, for which there is, for a short time, a considerable demand. Before the unusual demand ceases, the charge for rental usually pays for the cost of the book, which is thereafter placed in the free collection. If the library does not make a charge for the books in the duplicate pay collection, it cannot be expected that the library will continue to maintain this collection, by purchasing several duplicate copies of recent books, to satisfy a temporary popular demand. The result will be that the chances of a person obtaining, within a given time, the free use of a copy of one of these books, will be greatly lessened, and the purpose for which the statute and rule were adopted would be frustrated. Taking a common-sense view of the problem, it must be said that the "free use" of said library, as required by the statute, is secured to the public.
Similarly, it is my opinion that if the Madison Public Library acquires a reasonable number of copies of best seller books (the number it would normally acquire for its permanent collection) and allows these copies to circulate free of charge, then it can justifiably collect the one-dollar fee for lending any additional copies it purchases. This procedure furthers the goal of making best seller books available to the greatest number of patrons possible. *Page 90 
I would like to stress that this opinion is limited to the issue of access to library services. It does not extend to the issue of charging patrons for abuses of library privileges, such as collecting fines for overdue or lost books.
Further, I would like to stress that the constitutional "home rule" principle limits the scope of this opinion. In one of my prior opinions, 70 Op. Att'y Gen. 54 (1981), I concluded that a city, by charter ordinance, could rely upon the home rule provisions of Wisconsin Constitution article XI, section 3 and enable municipal libraries to deviate from several seemingly mandatory provisions of chapter 43 to fit local needs. Wisconsin Constitution article XI, section 3 states: "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." In State exrel. Michalek v. LeGrand, 77 Wis.2d 520, 526-27, 253 N.W.2d 505
(1977), the Wisconsin Supreme Court discussed the parameters of the home rule provision, stating:
 In defining what is or is not a matter for such empowerment, which is constitutionally granted to cities and villages in this state "to determine their local affairs and government," our court has outlined three areas of legislative enactment: (1) Those that are "exclusively of state-wide concern"; (2) those that "may be fairly classified as entirely of local character"; and (3) those which "it is not possible to fit . . . exclusively into one or the other of these two categories."
 As to the third "mixed bag" category of situations, our court has recognized" . . . that many matters while of `state-wide concern,' affecting the people and state at large somewhat remotely and indirectly, yet at the same time affect the individual municipalities directly and intimately, can consistently be, and are, `local affairs' of this [home rule] amendment."
This passage shows that whether "home rule" applies depends upon whether the matter is of local concern or statewide concern.
In my 1981 opinion, I concluded that municipal libraries are primarily of local concern. More specifically, I stated:
 Section 43.52, Stats., permits, but does not require, municipalities to establish, equip, and maintain a public library and levy a *Page 91 
tax or appropriate money therefor. Sections 43.01 and 43.05, Stats., provide that the Department of Public Instruction shall provide certain services in the nature of planning, coordination, and development of public library services, but does not grant the state supervisory control over municipal libraries. State aid is granted to library systems rather than to municipal libraries under sec. 43.24, Stats. The provisions of secs. 43.52(1), (2), 43.54(1), 43.58, 43.62, Stats., are evidence of a legislative intent that municipal libraries be primarily operated by and for the inhabitants of the municipality. The Legislature has not included any statement within ch. 43, Stats., to the effect that municipal libraries, or for that matter, library systems, are a matter of statewide concern. Services provided by a municipal library primarily affect the individual municipalities, and the inhabitants therein, "directly and intimately." They do affect the general public of the state and state at large "somewhat remotely and indirectly."
70 Op. Att'y Gen. at 57.
I concluded in the 1981 opinion that, because municipal libraries are primarily of local concern, a city by charter ordinance could allow such libraries to deviate from provisions of chapter 43 to accommodate local needs. I went on to stress, however, that a local library's membership in a federated or consolidated library system removes this "local concern" characteristic. Citing 63 Op. Att'y Gen. 317, 319 (1974), I stated: "Participation in such a system by a municipal library
would probably change its status from that which is primarily a local affair." 70 Op. Att'y Gen. at 58. The 1974 opinion had concluded that the statutory sections governing the creation of federated and consolidated systems are enactments of statewide concern. 63 Op. Att'y Gen. at 319.
The Madison Public Library belongs to a federated library system: The South Central Federated Library System. Public library systems (both consolidated and federated), being of statewide concern, operate not under home rule principles but under the supervision of the Department of Public Instruction's Division for Library Services. A number of statutory sections outline the authority that the Division can exercise in regard to public library systems. Section 43.09(2)(a) provides that the Division shall "promulgate necessary standards for public library systems," and that such standards shall be aimed at "ensur[ing] adequate library service." Section *Page 92 43.13(1)(a) states that "[n]o public library system may be established without the approval of the division." Further, section 43.24(3) provides that state aid shall be available to public library systems, but that such aid shall be conditioned upon the library system conforming to "this chapter [chapter 43] and such rules and standards as are applicable."
It is my opinion, then, that the Division for Library Services is empowered to require the Madison Public Library, by virtue of the Madison Public Library's membership in a federated library system, to adhere to the provisions of chapter 43, including section 43.52(2), as interpreted in this opinion. Libraries not belonging to federated or consolidated systems can choose to exercise powers of "home rule" and are not necessarily bound by this interpretation of section 43.52(2).
BCL:RCB