LIDA HANLIN and JOHN HANLIN, by Next Friend, Respondents, v. BURK BROTHERS MEAT & PROVISION COMPANY, Appellant.

Kansas City Court of Appeals, November 3, 1913.

1. DAMAGES: Pollution of Watercourses. The plaintiffs sued to recover damages for the pollution by the defendant of a natural watercourse that ran over their land. The defendant operated a meat packing plant and emptied into the stream highly offensive and deleterious fluids and substances which caused the stream and an adjacent well to become unfit for use. *Held*, that the plaintiffs were entitled to damages resulting from

loss to the rental value of their property to the date of the filing of the suit and from the permanent injury to the well which their evidence tends to show has been completely destroyed by the seepage from the polluted stream.

2. **GUARDIAN AD LITEM:** Next Friend: Action by Minor: Appearance. The appearance of an infant plaintiff in court without a guardian or next friend does not close the door of the court against him, but imposes a duty on the court to appoint a guardian to represent him. A minor may be brought into court as a defendant by service of process, or he may submit himself to the jurisdiction of the court as a plaintiff, after which, in either case, it becomes the duty of the court to appoint a guardian *ad litem* to represent him.

3. **DAMAGES:** Permanent and Temporary Nuisance. When a dominant proprietor has set up a nuisance to the injury of his servient neighbor that may be abated or discontinued at any time, it is a temporary injury and not permanent.

Appeal from Adair Circuit Court.—*Hon. Nat M. Shelton,* Judge.

Reversed and remanded.

*C. E. Murrell* and *P. J. Rieger* for appellant.

*Smoot & Cooley* and *J. E. Rieger* for respondents.

JOHNSON, J.—This suit was instituted March 9, 1911, in the circuit court of Adair county by Lida Hanlin and her minor son, John, against the defendant corporation to recover damages resulting from the pollution by defendant of a natural stream flowing across land owned by plaintiffs near the city of Kirksville. A trial of the issues raised by the pleadings resulted in a verdict and judgment for plaintiffs in the sum of $250, and the cause is here on the appeal of defendant.

It appears that John Hanlin who now is of lawful age was only twenty years old at the time the suit was brought and that his attorneys, not knowing of his minority, acted in his behalf as though he were *sui juris,*

and joined him as party plaintiff without first pro-
curing the appointment of a next friend to prosecute
the action for him.  After the petition was filed and
the summons was issued and served, the attorneys dis-
covered the error and at the return term and before
answer, procured the appointment of the father of the
minor plaintiff as his next friend.  The father died be-
fore the trial and Lida Hanlin, the mother and co-
plaintiff of the minor, was appointed as his next friend.
No amended petition was filed alleging the facts of
the minority of John and of the appointment of a next
friend to prosecute the action in his behalf.  A motion
to dismiss the action on the ground that the minor
plaintiff ''does not have legal capacity to sue, being a
minor and under the age of twenty-one years of age
and no next friend was appointed for him prior to
commencing this action, '' was filed by defendant and
overruled by the court.  Defendant then filed an an-
swer in which it is alleged that ''John Hanlin is a minor
and as such minor had no legal right to bring this
suit prior to the appointment of next friend by the
court or clerk in vacation for the purpose of bringing
such suit, that no one had been legally appointed to
act for such minor in this action and this court is with-
out jurisdiction to hear and determine this cause.''

Counsel for defendant argue that since the statute
(Sec. 1745, Rev. Stat. 1909) requires that ''the petition
for the appointment of a next friend, the written con-
sent of the person proposed to be next friend and the
order of appointment shall be filed in the office of the
clerk of the court where the suit is proposed to be
brought, before any proceedings shall be had in the
cause,'' the failure to procure the appointment of a
next friend before the filing of the petition constituted
a jurisdictional defect fatal to the prosecution of the
suit and which could not be cured by a subsequent at-
tempt to comply with the statute.

A minor is deemed incapable in law of employing counsel or of prosecuting an action in his own behalf and, therefore, can sue only by next friend or guardian. [Kurtz v. Eisenstein, 123 Mo. App. 288.]   If one thus incapable assumes the right to act in his own behalf without the previous appointment of a next friend or guardian, he will not be bound by the proceeding if its result is unfavorable to him but may repudiate it after attaining his majority.

The statute quoted contemplates that a minor, possessed of a cause of action, shall have the benefit of adult agency and judgment before any step is taken in the prosecution of his case and the Supreme Court observed in Holton v. Towner, 81 Mo. 1. c. 367, that the appointment of a next friend ''can only be made at the time and in the manner pointed out by the statute,'' and held in Casler v. Chase, 160 Mo. 418, that the petition should allege facts showing compliance with the statute.

But in a number of cases the Supreme Court hold that the appearance of an infant plaintiff in court without a guardian or next friend does not close the door of the court against him but imposes a duty on the court to appoint a guardian to represent him.   The court say in Cochran v. Thomas, 131 Mo. 1. c. 275: ''It appears, therefore, that a minor, as he may be brought into court as a defendant by service of process, so he may submit himself to the jurisdiction of the court as a plaintiff, after which in either case it becomes the duty of the court to appoint a guardian *ad litem* to represent him.''

And in Padgett v. Smith, 206 Mo. 1. c. 313, it is said: ''There is no merit in the contention of want of jurisdiction. The defendant Smith was duly served, appeared, answered and went to trial. Those steps closed the question of jurisdiction as to his person. The jurisdiction of the infant plaintiff is also un-

doubted. That jurisdiction did not depend on whether his grandfather was his guardian at the inception of the suit, or whether the court subsequently appointed Mills to act as his guardian for the purposes of the case. The court would have had jurisdiction of the infant if he had appeared by an attorney alone. [Cochran v. Thomas, 131 Mo. 1. c. 275; Chrisman v. Divinia, 141 Mo. 122; Jones v. Steele, 36 Mo. 324; Holton v. Towner, 81 Mo. 360.]''

Following these cases we hold that the court acquired jurisdiction over the infant plaintiff and his cause and became charged with the duty on the discovery of his minority of appointing a next friend to represent him. Further we may add that the Statute of Jeofails (Sec. 2119, Rev. Stat. 1909) contemplates that such jurisdiction may be acquired without literal compliance with the statute relating to the appointment of a next friend. The seventh clause provides that no judgment recovered by an infant shall be reversed or impaired because the plaintiff appeared by attorney and not by next friend or guardian.

Since the court had jurisdiction over the minor plaintiff and the cause of action, no error was committed in appointing a next friend to represent him during his minority.

In 1910, defendant built and began operating a meat packing plant on land near that owned by plaintiffs and it is charged in the petition that highly offensive and deleterious fluids and substances were constantly being emptied from the plant into the stream which flows thence across the land of plaintiffs. The evidence of plaintiffs tends to show that the pollution thus cast upon their premises has made the waters of the stream unfit for use, the dwelling house untenantable and has destroyed a well near the bank of the stream. The evidence of defendant is to the effect that the plant is under Government inspection, is op-

erated under the most modern scientific and sanitary rules and that no offensive or injurious matter is emptied into the stream. This difference in the evidence was resolved by the jury in favor of plaintiffs and no point is made by defendant that the verdict is not supported by substantial evidence. Defendant does complain, however, of the instruction given at the request of plaintiffs on the measure of damages which is founded on the idea that the damages, if any, sustained by plaintiffs are permanent, and should be measured by the depreciation in the market value of the land caused by the erection and maintenance of a permanent nuisance. As supporting the ruling of the court in giving this instruction, we are cited by counsel for plaintiffs to the cases of Smith v. Sedalia, 182 Mo. l. c. 12; Smith v. Sedalia, 244 Mo. 107; Kellogg v. Kirksville, 132 Mo. App. 519; Kellogg v. Kirksville, 149 Mo. App. 1.

Those were cases where a city constructed a public sewer system in a way to collect and empty sewage into a natural stream to the injury of a servient proprietor. Both the Supreme Court and this court held the damages were permanent on the theory that the sewer was a permanent structure, that its continued use by the city could not be prevented by law and that in legal effect the land of the complaining plaintiff had been appropriated for public use without just compensation. As is said by the Supreme Court in Smith v. Sedalia, 244 Mo. l. c. 122:

"This suit is not grounded upon trespass merely, nor upon nuisance, although the injury takes the form of a nuisance, but upon the constitutional right to compensation for property damaged for public use (Webster v. Railroad, 116 Mo. l. c. 118; Turner v. Railroad, 130 Mo. App. 540); and it is so argued in plaintiff's brief. The city, by proper proceedings to that end, had the right by statute to secure the use of this stream

for sewer purposes. The city did not condemn, but appropriated the use. Such action, however, does not deprive the plaintiff of his right to compensation, nor does it affect the measure of damages, which, for such use by the city, whether by condemnation or appropriation, is the diminution in market value of the land damaged. As this court said in McReynolds v. Railroad, 110 Mo. l. c. 488, 'no good reason, founded upon principle, can be assigned why the same rule should not be applied in both classes of cases' (condemnation and appropriation); 'the injury is just the same, the damage is the same, and the compensation should be the same.'

"Both suits brought by plaintiff are, substantially, actions for damages for injury to his land resulting from a wrongful appropriation by the defendant city. He concedes the right of the city to condemn, and complains because it has not done so, insisting in effect that the city shall put him in the position to claim permanent damages; but by his 1895 suit he has put himself in position to claim the same measure of damage in full compensation for the injury."

In the present case a dominant proprietor has set up a nuisance to the injury of his servient neighbor that may be abated or discontinued at any time and, therefore, is of a temporary nature. The rule in such cases is not to measure the damages by the depreciation in the market value of the land, but to allow the plaintiff to recover for loss and damage to the comfortable use or rental value of the premises caused by the temporary nuisance to the time of the commencement of the action, together with such special damages as may be shown by the evidence to have resulted directly therefrom. On the showing made by plaintiffs they were entitled to damages resulting from loss to the rental value of their property to the date of the filing of the suit and from the permanent injury to the

well which their evidence tends to show has been completely destroyed by the seepage from the polluted stream.

The judgment is reversed and the cause remanded.