GUSTA BAKER, BY JAMES BAKER, NEXT FRIEND, RESPONDENT, v. D. V. MARDIS, ET AL., APPELLANTS.*

Kansas City Court of Appeals.   January 3, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 1599, p. 1435, n. 49; Conspiracy, 12CJ, section 107, p. 586, n. 13; section 256, p. 645, n. 81; Damages, 17CJ, section 365, p. 1065, n. 7; Evidence, 22CJ, section 698, p. 604, n. 3; Fraud, 27CJ, section 219, p. 78, n. 17; Infants, 31CJ, section 280, p. 1132, n. 97; section 287, p. 1137, n. 13; section 288, p. 1137, n. 22; Pleading, 31Cyc, p. 737, n. 1; Trial, 38Cyc, p. 1634, n. 15; Witnesses, 40Cyc, p. 2382, n. 29; p. 2397, n. 64.

*C. B. Burns* for respondent.

*H. K. West* and *Chas. K. Hart* for appellants.

ARNOLD, J.—This is an action in damages based upon an alleged fraudulent change in the beneficiary of a life insurance policy. Plaintiff is a minor, and the suit was brought in her name by her uncle and next friend, James Baker. Defendants are D. V. Mardis who was cashier of the Farmers Bank of North Salem, Linn county, Missouri, and Robert Baker, grandfather of Gusta Baker. All the parties reside in the vicinity of North Salem.

It appears that on November 18, 1919, the Central States Life Insurance Company of St. Louis, Mo., issued a policy of insurance on the life of Benjamin H. Baker, in the sum of $1500, naming as beneficiary therein Ida Esther Baker, wife of the insured. It further appears the said policy was retained in the Farmers Bank of North Salem by defendant Mardis who was the agent of the insurance company in the procurement of the policy. The insured, Benjamin H. Baker with his wife Ida Esther, sometimes referred to in the record as Ida May Baker, and their three children (including plaintiff herein) lived in the home of defendant Robert Baker, father of the insured, and his wife Nan Baker, and had lived there for many years. The record shows that in the autumn of 1918, the influenza was prevalent in the vicinity of North Salem and Benj. H. Baker and his family became afflicted with that disease. Ida E. Baker died on November 25, and on the same day, one of the children succumbed to the disease and the two were buried in one casket. About the same time, another one of the children died, and on the 28th of November, Benjamin H. Baker himself died, leaving of this family only the child Gusta, plaintiff herein.

It is in evidence that the insurance policy contained the following provision:

"Beneficiary—Change of,—

"Provided the insured has reserved the right to change the beneficiary in the application herefor, the insured may at any time while this policy is in force, by written notice to the company at its home office, change the beneficiary, such change to take effect only upon endorsement of the same on the policy by the company, whereupon, all rights of the former beneficiary shall cease, provided that no such change of beneficiary shall be valid if the policy or any interest therein be assigned at the time of such change. If any beneficiary shall die before the insured, the interest of such beneficiary shall vest in the insured."

It appears that after the death of Ida E. Baker and while her remains and those of one child were in the home, a request for a

change in the name of the beneficiary from Ida Esther Baker to Robert A. Baker, father of insured, was made in writing purporting to have been signed by the insured. The testimony shows this request was made by telephone communication to defendant Mardis; that Mardis prepared such request in letter form directed to the insurance company at St. Louis, Mo., and the name of the beneficiary was so changed and endorsed on the policy. The request for such change was sent by Mardis to the home of insured for his signature through a Doctor Nevins who was his attending physician.

At this point there is much conflict in the testimony. In behalf of defendants, it is to the effect that Dr. Nevins was accompanied to the home of Benj. H. Baker by James Nevins (son of the doctor) and one Leland McCollum. Dr. Nevins died before the suit was tried and did not testify; but James Nevins and McCollum testified that Dr. Nevins presented the paper to Benj. H. Baker for his signature and that insured, reclining in bed, signed the same while his hand was being guided by Dr. Nevins.

There was testimony in behalf of plaintiff contradictory of James Nevins and McCollum, to the effect that the said paper was never in the Baker home. There was further testimony bearing on this point to the effect that Benj. H. Baker was delirious and not of sane mind at the time of the alleged signing of said request. It is upon this point that this legal battle is waged.

It further appears that after the purported signing, the paper in question was retained by Dr. Nevins and by him delivered to Mardis at the bank. On the death of the insured and within forty-eight hours of the death of Ida E. Baker, according to plaintiff, proofs of loss were made and in due time the face of the policy, to-wit, $1500 was paid to defendant Robert Baker, by draft, and by him deposited to his own credit in the Bank of North Salem. Out of this amount Robert Baker testified he paid the doctor bills, the funeral expenses, put up monuments to insured's family and paid a note of $465 at the Farmers Bank of North Salem, on which he was obligated as surety for his son, James Baker, next friend herein, and used the remainder as his own. He further testified he made no report of the insurance collected to the probate court of Linn county.

The petition herein was not filed until May 22, 1926, and then was filed by James Baker, as next friend of plaintiff. It appears that at the time of the events complained of, James Baker was with the American Expeditionary Forces in France and did not learn of the matters in question until long after his return. Upon hearing the facts, this suit was instituted in the manner above indicated.

The petition alleges plaintiff is thirteen years of age and that she is the daughter of Benjamin H. and Ida May Baker who died on or about November 25 and November 28, 1918, respectively; that

the death of plaintiff's mother preceded that of her father; that her father at his death had a policy of insurance on his life in the amount of $1500, the beneficiary named therein being her mother, Ida May Baker; that on the 26th or 27th of November, 1918, and after the death of plaintiff's mother, defendants, with unlawful, wicked and designed intent to cheat and defraud plaintiff, wrongfully, unlawfully, wickedly and designedly changed the name of the beneficiary from Ida May Baker to that of Robert Baker, defendant herein; that at the time of the change in the beneficiary, defendants well knew that Benj. H. Baker was unconscious, delirious and unable to know or discern any action whatever, and never knew that said beneficiary was changed at the time of his death; that the collaboration of both defendants was used wrongfully, unlawfully, wickedly and designedly to change the beneficiary in said policy and cheat and defraud this plaintiff out of the just sum of $1500; that said policy was kept by defendant Mardis on the pretext that Benj. H. Baker was indebted to the bank of North Salem, of which defendant Mardis is the cashier; that the said acts of defendants have become known only within the past three weeks, and known to plaintiff only within that period of time; that plaintiff is entitled to the proceeds of said insurance policy; that the same has been usurped, kept and controlled by defendants and each of them, acting jointly and in unison, for the sole purpose of defrauding plaintiff. Damages are sought in the sum of $1500.

Defendants' first amended answer admits the relationship of plaintiff, as pleaded in the petition, and that Benj. H. Baker and Ida May Baker are deceased and that plaintiff is now about the age of thirteen years.; as to all other allegations in the petition, a general denial is pleaded. As affirmative defense the answer avers that plaintiff is a minor under the age of fourteen years and that she cannot maintain this action except through a duly appointed and qualified next friend; that James Baker, named in the petition as such next friend, has never been legally appointed and qualified as such next friend; that plaintiff, at the time, was residing with Robert Baker and that no notice of application for the appointment of next friend for plaintiff was given the said Robert Baker; that the court therefore is without jurisdiction to proceed to trial in the case; that no lawful appointment of next friend has been made herein, and that said James Baker has no legal right to maintain this action as next friend.

The cause was tried to a jury in the Brookfield division of the circuit court of Linn county, Mo., and resulted in a judgment for plaintiff in the sum of $1100. A motion for a new trial was overruled and defendants have appealed.

The first point urged by defendants is that James Baker was never legally appointed plaintiff's next friend for the purposes of this suit. The answer raised this point. The record shows that on October 4, 1926, the consent of James Baker so to act was filed in the circuit court, of Linn county, as follows:

"Comes now James Baker, and hereby agrees to act as next friend for Gusta Baker an infant, in the prosecution of this action.

"(Signed)               James Baker."

And on the same day the following order of the court was entered of record:

"Now on this fourth day of October, 1926, it being the first day of the regular October term of the circuit court of Linn county, Missouri, the court hereby appoints and approves James Baker as and for the next friend of Gusta Baker, an infant, in the prosecution of this action."

It is defendants' position that there was irregularity in the appointment of James Baker, as next friend, in that no request therefor was made by plaintiff; and no notice thereof was served on Robert Baker, in whose custody Gusta Baker was.

This objection is based upon the provisions of sections 1165, 1166, 1167 and 1168, Revised Statutes 1919. These sections provide:

(a) "Suits by infants may be commenced and prosecuted, either: First, by the guardian or curator of such infant; or, second, by a next friend appointed for him in such suit.

(b) "The appointment of a next friend for an infant shall be made by the court in which the suit is intended to be brought, or by a judge or clerk thereof.

(c) "Such appointment shall be made on the petition in writing of such infant, if of the age of fourteen years, and the written consent of the person proposed to be next friend to such infant acknowledged before, or proved to the court or officer making the appointment.

(d) "If such infant be under the age of fourteen years, the appointment of a next friend may be made upon like petition of a relative or friend of the infant, in which case a notice thereof must first be given to the person with whom such infant resides."

Defendants rely upon the provisions of the section last above quoted and insist that, as plaintiff was under the age of fourteen years, the appointment of next friend should be made by petition of a relative or friend of the infant, in which case a notice thereof must be given the person with whom such infant resides.

On this phase of the case, it is well to note the record fails to show such petition was filed and notice given to defendant Robert Baker. While the situation may be considered somewhat irregular, we find the record shows the court appointed and approved James

Baker as next friend for the purpose of this action and also shows the acceptance by James Baker of such appointment. The apparent irregularity cannot be held to affect the substantial rights of the parties. Section 1276, Revised Statutes 1919, would seem to apply directly to this situation:

"The court shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

The rule which is undisputed is that the court may appoint a next friend, even after verdict, if it is disclosed an infant is a party, plaintiff or defendant. This court held in Hanlin v. Meat Co., 174 Mo. App. 462, 465 (opinion by Johnson, J.), as follows:

"The statute quoted contemplates that a minor, possessed of a cause of action, shall have the benefit of adult agency and judgment before any step is taken in the prosecution of his case and the Supreme Court observed in Holton v. Towner, 81 Mo. 367, that the appointment of a next friend 'can only be made at the time and in the manner pointed out by the statute,' and held in Casler v. Chase, 160 Mo. 418, that the petition should allege facts showing compliance with the statute.

"But in a number of cases the Supreme Court held that the appearance of an infant plaintiff in court without a guardian or next friend does not close the door of the court against him but imposes a duty on the court to appoint a guardian to represent him. The court say in Cochran v. Thomas, 131 Mo. 275: 'It appears, therefore, that a minor, as he may be brought into court as a defendant by service of process, so he may submit himself to the jurisdiction of the court as a plaintiff, after which in either case it becomes the duty of the court to appoint a guardian *ad litem* to represent him.'"

In Mabe v. Mfg. Co., 271 S. W. 1023, we followed the rule enunciated in the Hanlin case and the citations therein; and therefore hold the court had jurisdiction in the instant case. There was no error in the respect charged.

It is urged the court erred in refusing to permit defendants to show the exact age of plaintiff. This point was determined against defendant's contention in our ruling on point 1, and we need not discuss it further.

Defendants declare the court erred in permitting non-expert witnesses to express an opinion as to the physical and mental condition of Benj. H. Baker, at the time of the alleged signing of the request for change of beneficiary; that these witnesses were asked to state their opinion as to the condition of mind of the insured at the time; that they were not medical witnesses and had no qualifications as experts.

We do not understand from the record that the witnesses against whose testimony this complaint is lodged were, in fact, offered as experts, but rather as neighbors who observed insured's condition at the time in question. This question was determined against defendants' contention in Hunter v. Briggs, 254 Mo. 28, 162 S. W. 204, wherein the court held nonexpert witnesses must first state the facts within their knowledge upon which they base their opinion of the mental condition of the deceased whose deed it was sought to have set aside on the ground of lack of mental capacity to make it, before such opinions are admissible in evidence; but if they specifically state those facts, and the reasons for their opinions, it is not error to permit them to state their opinions. The record herein discloses the court required of each of the witnesses a sufficient statement of facts upon which to comply with the rule laid down by the Supreme Court in the Hunter case. It would seem that counsel for defendants recognized this well-established rule of evidence by introducing witnesses, asking an opinion as to the mental *status* of the insured. The point is therefore ruled against defendants' contention.

It is urged that Dr. Hanning should not have been permitted to testify as to information he acquired as a physician from an examination of the insured. The record discloses that Dr. Hanning was not a physician in charge of the case, but was called in consultation with Dr. Nevins, and the information from which he testified was such as to enable him to prescribe for the patient.

Defendants base their objection upon the provisions of section 5418, Revised Statutes 1919, where, in defining parties incompetent to testify, it is stated:

". . . fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

The incompetency of a physician to testify lies in statutory enactment. It is held in Epstein v. Railroad, 250 Mo. 1, 156 S. W. 699, a patient may waive the disqualifications of his physician to testify. Under the statute and rule above stated, the testimony of Dr. Hanning was privileged, but such privilege could be and was waived by plaintiff, and there was no error in the admission of this testimony. [Croll v. Tower, 85 Mo. 249; Thompson v. Ish, 99 Mo. 160; Canty v. Halpin, 294 Mo. 96; 242 S. W. 94.]

It is urged the court erred in giving plaintiff's instructions numbered 1 and 4, that the instructions are erroneous because they do not require the jury to find the essential element of a conspiracy, i. e., a combination or agreement to do an unlawful act. We think

the objection good; the petition charges conspiracy between defendants Mardis and Baker, and therefore conspiracy is made an element of plaintiff's right to recover. Instruction No. 1 purports to cover the whole case and directs a verdict and yet fails to require a finding on the element of conspiracy. Instruction No. 4 is as follows:

"The court instructs the jury that if you find and believe by a greater weight of the evidence that the defendant wrongfully, unlawfully, wickedly and designedly changed the policy of insurance mentioned in evidence with the intent to cheat and defraud Gusta Baker and received the money or either of them then you will find for the plaintiff against both defendants even though you should find that one of the defendants secured all the money from the policy."

This instruction has the same fault as No. 1, in that it does not require a finding that conspiracy was proved. The question of the existence of a conspiracy was for the jury, and a finding thereon by that tribunal should have been required by proper instructions. [Barton v. Maupin, 281 S. W. 83; 12 C. J., pp. 586, 645, and cases therein cited.]

A charge of error is directed against the refusal of the court to give defendants' instructions 1 and 2. These instructions sought to tell the jury that upon the death of her parents the plaintiff was not entitled to receive the proceeds of the insurance; that, in the event of the death of the beneficiary named in the policy prior to the death of the insured, the insurance was payable to the insured and if the beneficiary under said policy had not been changed, upon the death of the insured, the insurance would have been payable to executor or administrator of his estate; and that plaintiff Gusta Baker sustained no damage by reason of such change of beneficiary and cannot recover in this action. This position is urged upon the basis that the record does not disclose the condition of the estate of insured, or the number of his heirs.

We find the argument to be without merit as there is testimony to the effect that plaintiff is the only surviving member of insured's family. The policy provided that in case of the death of the beneficiary named therein before the death of the insured, the proceeds should go to the estate of the insured. There was no error in refusing the offered instructions. The question of plaintiff's legal capacity to sue in this respect was not raised by demurrer or answer and the point was therefore waived. [Sec. 1226, R. S. 1919; Bulkley v. Iron Co., 77 Mo. 105.]

Instruction No. 1 for plaintiff is attacked upon the ground that it gives the jury a roving commission to find for plaintiff in any sum. We find the instruction specifically limits the jury to $1500

and interest and therefore the objection is not well founded. This covers also defendants' points 8 and 9 to the effect that the verdict should have been set aside on motion of defendants.

A charge of error is directed against plaintiff's instruction No. 5, which informs the jury that if they find and believe from the evidence that Benjamin H. Baker, at the time of the alleged change of beneficiary, was not of sufficient soundness of mind to know and discern his acts, etc., they should find for plaintiff. It is insisted no such issue is covered by the pleadings. We find the instruction goes directly to the heart of plaintiff's case, conforms to the evidence, and is not error.

Defendants have filed a motion asking this court to permit them to offer additional suggestions to their brief. This may not be permitted, inasmuch as the motion attempts to raise new issues after joinder in error by the filing of plaintiff's brief. The motion therefore is overruled.

By reason of the error above indicated, the judgment is reversed and the cause remanded for a new trial. *Bland, J.,* concurs; *Trimble, P. J.,* absent.