463 P.2d 935

Jack PAULSON, Dan Paulson, and Kirk Paulson, Plaintiffs-Respondents,

v.

MINIDOKA COUNTY SCHOOL DISTRICT NO. 331, Dale Garner, Leonard Martin, Leo Moore, Kenneth Shufeldt, Dave Spreier, as individuals and as Trustees of School District No. 331, and Camden Meyer, Superintendent of Schools, Defendants-Appellants.

No. 10418.

Supreme Court of Idaho.

Jan. 16, 1970.

Creason & Creason, Rupert, and Moffatt, Thomas, Barrett & Blanton, Boise, for appellants.

Goodman & Duff, Rupert, for respondents.

J. N. Leggat, Boise, amicus curiae.

McQUADE, Justice.

This action was instituted by Jack Paulson, and his sons Dan and Kirk Paulson, to secure an alternative writ of mandate, a peremptory writ of prohibition, declaratory relief, general damages, punitive damages and costs of the action. They sought to compel the defendants Minidoka County School District, its trustees and superintendent, hereinafter referred to collectively as the "school," to furnish a transcript of grades to Dan Paulson who graduated from Minidoka County High School in June, 1968. Dan and Kirk both attended the high school during the school year 1967–1968. Dan graduated that school year, and Kirk attended school during the 1968–1969 term. The issues in the present case arose from the adoption in 1967 by the Board of Trustees of the Minidoka County School District of the following schedule of fees to be charged each student attending the high school:

| "School District Fees | $ 2.50 |
|---|---|
| Text Book Fees | 10.00 |
| Activity Ticket | 3.50 |
| Student Council Fee | 1.00 |
| Newspaper | 1.00 |
| Annual (Yearbook) | 5.60 |
| Cap and Gown Fee | 1.00 |
| Class Fee | .40 |
| | $25.00" |

In July, 1968, the fee schedule was amended so that although the same total of $25.00 per student was charged, the fees were itemized only as "Text Book Fees"—$12.50 and "School Activity Fees" —$12.50, total $25.00.

Dan and Kirk Paulson have each year refused to pay these fees. The school would not accept partial payment allocated to any one particular item, but insisted that the fees be paid in their entirety. Failure to pay the fees, however, did not in any way affect the student's right to attend classes. Not only were nonpaying students allowed to attend classes, but they were also furnished textbooks free of charge. Until 1968–1969 all students were regularly given a student activity card and thereby allowed to attend social and athletic events even though the fees were not paid. Yearbooks were not furnished, nor were non-paying students allowed to purchase a yearbook since the school's policy was that the entire $25.00 fee be paid. Upon graduation Dan Paulson was furnished a cap and gown and presented a diploma.

Although a student could thus accumulate an "education" without payment of the fees, the impediment is that the school refuses to furnish a transcript of courses studied and grades achieved. When Dan applied to Idaho State University for admission, the school would not furnish a University required transcript. Dan was, however, provisionally admitted and this action was instituted to compel the high school to furnish a transcript.

Following trial, the district court rendered judgment that the fee charging practice of the school district is unconstitutional and issued a writ of mandate ordering the defendants to furnish Idaho State University a transcript. The court denied the respondents' prayer for damages. It is from that judgment that the appellants take this appeal.

Our task in this case is to determine the application of art. 9, sec. 1 of the Constitution of the State of Idaho to this particular factual situation. That section is:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."

Because of the delicacy and difficulty in resolving constitutional problems we settle such questions on a case-by-case basis. We, today, affirm the judgment of the lower court; and we hold that public high schools in Idaho are "common schools" within the meaning of art. 9,

sec. 1; that the $25.00 fee *as it was charged in this case* offended the requirement that the "common schools" be "free;" and that the appellants were under a clear legal duty to furnish transcripts to eligible graduates of Minidoka County High School. We decide these issues because they are necessary for the final determination of this action.

Appellants contend that the term "common schools" does not include "high schools" such as the Minidoka County High School. To support this contention, they have directed our attention to several Idaho statutes of varying age which distinguish between "elementary" and "secondary" schools. Such distinction is for administrative convenience, and has no relevance to the term common schools as used in art. 9, sec. 1 of our constitution. They also refer to a South Dakota case which is not in point.[1] On this basis they argue that "common" is limited to "elementary." This argument is not in accord with the reasoning or the holdings in practically every case deciding this issue.

While we have never decided the question raised in this case, on a number of occasions this Court has been called upon to review legislation concerning Idaho's high schools. We have assumed in those instances that the legislature had determined that high schools were elements of our free common school system.[2] There are cases decided before 1890 which specifically hold that high schools were comprehended by constitutional language like our own.[3] These holdings are in accord with practically the entirety of the case law in the years since Idaho was

1. State ex rel. Prchal v. Dailey, 57 S.D. 554, 234 N.W. 45 (1931).

2. *See, e. g.*, Andrus v. Hill, 73 Idaho 196, 249 P.2d 205 (1952); Robbins v. Joint Class A School Dist. No. 331, 72 Idaho 500, 244 P.2d 1104 (1952).

3. *E. g.*, The High School of the County of Clayton v. The County of Clayton, 9 Iowa 175 (1859); Jenkens v. Inhabitants of Andover, 103 Mass. 94 (1869); Richards v. Raymond, 92 Ill. 612, 34 Am. Rep. 151 (1879); *cf.* Powell v. Board of Education, 97 Ill. 375, 37 Am.Rep. 123 (1881). Because many of the delegates to the Constitutional Convention were outstanding lawyers in their day, we generally presume that they knew and acted on such prior and contemporaneous interpretations of constitutional words which they used. *See* Higer v. Hansen, 67 Idaho 45, at 62, 170 P.2d 411 (1946).

admitted to statehood.[4] Only three cases holding that high schools are not common schools have been called to our attention. The first two, from Utah and Washington, involve constitutional provisions which explicitly—and most unusually—distinguish high schools from common schools.[5] The third case, State ex rel. Prchal v. Dailey,[6] concerns the interpretation of a statute. In that case, at 234 N.W. 50, the Supreme Court of South Dakota distinguished the process of construction of a statute from the interpretation of a constitution, and, in dictum, suggested that a similar constitutional provision probably would include high schools.

We hold that Minidoka County High School is a "common school" within the meaning of art. 9, sec. 1 of the Idaho Constitution. Because the appellants' high school is a "common school," it must, by constitutional command, be "free."

The appellants, however, argue at some length that the high school in this case was "free" despite the mandatory $25.00 fee. One half of the $25.00 fee is assigned as payment for what appellants themselves call extra-curricular activities. If a student of Minidoka County High School wishes a transcript of his scholastic achievement he must pay the entire $25.00, one-half of which is expressly consigned to fund extra-curricular activities. Items

which are "extra-curricular" are, by definition outside of or in addition to the regular academic courses or curriculum of a school.[7] A levy for such purposes, imposed generally on all students whether they participate in extra-curricular activities or not, becomes a charge on attendance at the school. Such a charge contravenes the constitutional mandate that the school be free. But it should be noted that, because social and extra-curricular activities are not necessary elements of a high school career, the constitution does not prohibit appellants from setting fees to cover costs of such activities to be paid by students who wish to exercise an option to participate in them.

The other half of the $25.00 fee, the $12.50 "textbook fees" stands on different ground. Textbooks are necessary elements of any school's activity. They represent a fixed expense peculiar to education, the benefits from which inure to every student in equal proportion (ignoring differences in ability and motivation) solely as a function of his being a student. Unlike pencils and paper, the student has no choice in the quality or quantity of textbooks he will use if he is to earn his education. He will use exactly the books, prescribed by the school authorities, that his classmates use; and no voluntary act of his can obviate the need for books nor lessen their expense.[8]

---

4. *E. g.* Lynch v. Commissioner of Education, 317 Mass. 73, 56 N.E.2d 896 (1944); State ex rel. Henderson v. Dawson County, 87 Mont. 122, 286 P. 125 (1930); Greathouse v. Board of School Com'rs., 198 Ind. 95, 151 N.E. 411 (1926) (construing language like art. 9, sec. 1, from 1816 constitution); Special School District No. 65, Logan County v. Bangs, 144 Ark. 34, 221 S.W. 1060 (1920); Dickinson v. Edmondson, 120 Ark. 80, 178 S.W. 930 (1915); Cook v. Board of Directors of School Dist. No. 80, 266 Ill. 164, 107 N.E. 327 (1914); People v. Moore, 240 Ill. 408, 88 N.E. 979 (1909); City of Louisville v. Commonwealth, 134 Ky. 488, 121 S.W. 411 (1909); *see also* Annotation What is Common or Public School Within Contemplation of Constitutional

or Statutory Provisions, 113 A.L.R. 697, 702–710.

5. Logan City School District v. Kowallis, 94 Utah 342, 77 P.2d 348 (Utah, 1938); School District No. 20 v. Bryan, 51 Wash. 498, 99 P. 28, 20 L.R.A.,N.S., 1033 (1909).

6. 57 S.D. 554, 234 N.W. 45 (1931).

7. Webster's New International Dictionary of the English Language 902 (2nd ed. unabridged 1942).

8. This discussion does not preclude appellants from demanding a *reasonable* deposit from students for extraordinary wear and tear or damage to school books. See generally, Segar v. Board of Education of the School District of the City of Rockford, 317 Ill. 418, 148 N.E. 289 (1925).

School books are, thus, indistinguishable from other fixed educational expense items such as school building maintenance or teachers' salaries. The appellants may not charge students for such items because the common schools are to be "free" as our constitution requires.[9]

Appellants contend, however, that they are giving and have given the respondents "free high school educations," which is all that is required by the constitution. The appellants would separate the transcript from the educational experience it evidences and they argue that they are merely making availability of a transcript contingent upon payment of the fees. They also reason that they are under no clear legal duty to furnish a transcript and are not subject, to mandamus. This argument evidences a serious misapprehension of the constitutional requirement of free schools. If the constitution said that all that was necessary was a "free common school education" the case might be different, but the constitution instead demands "free common schools." The *school* and the entire product to be received from it by the student must be "free."

The appellants failed to provide "free common schools" when they made access to the official reports of the students' records contingent on the $25.00 fee charged in this case. This fee bears no apparent relationship to the actual costs of printing and distributing the transcripts. It instead serves an enforcement purpose only. The appellants have withheld Dan's transcript to coerce payment of the lump-sum $25.00 fee. Because they may not charge the fee it follows that they may not penalize non-payment of the fee by withholding an incidental but necessary transcript.

9. Appellants argue that if books must be provided free of charge then it becomes impossible to draw a line and even school clothing must be given away. This contention is answered by pointing out that clothing is not an item peculiarly necessary for the use of free schools—every-

The legal duty to make available a transcript arises from the practicality that, in our society, the ability to obtain a transcript without cost, is a necessary incident of a high school education. A reasonable fee, after the first free transcript, representing actual average costs, would be proper and may be charged for the duplication and issuance of subsequent transcripts.

The judgment of the lower court is affirmed. The district court's denial of respondents' motion for attorney fees is hereby affirmed.

Costs to respondents.

McFADDEN, C. J., and DONALDSON, and SPEAR, JJ., concur.

SHEPARD, J., sat but did not participate in the opinion.

one must be clothed if he walks the streets—and it is an item of expense which is especially subject to personal taste in terms of the cost, quality and quantity of it used by any individual student.