**CONCERNED PARENTS et al., Appellants,**

**and**

**State Board of Education, Intervenor-Appellant,**

v.

**CARUTHERSVILLE SCHOOL DISTRICT 18 et al., Respondents.**

No. 59626.

Supreme Court of Missouri, En Banc.

April 11, 1977.

Robert J. Goodwin, Caruthersville, for appellants.

Karen M. Iverson, Asst. Atty. Gen., Jefferson City, for intervenor-appellant.

Byron D. Luber, Caruthersville, for respondents.

FINCH, Judge.

This is an appeal from an order of the circuit court dismissing plaintiffs' petition with prejudice on the ground that it failed to state a claim for relief. The principal question to be resolved is whether public school districts in Missouri are constitutionally prohibited from charging registration fees and course fees as prerequisites to enrollment and to participation by school age children in classes offered for academic credit by the district. Plaintiffs contend that the district's policy of charging registration and course fees, plus requiring students to furnish certain supplies in courses offered for academic credit, violates Mo. Const. art. IX, § 1(a), which requires that free public schools be maintained for the gratuitous instruction of all children of school age, and the equal protection clauses of Mo.Const. art. I, § 2, and U.S.Const. amend. XIV. Since issues of constitutional construction are involved, we have jurisdiction. Mo.Const. art. V, § 3. We reverse and remand.

In the petition herein, filed November 26, 1975, plaintiffs are Concerned Parents, an unincorporated association of 18 people (14

of whom have children in the school district), six parents who have children attending schools in the district and 13 children who are attending said schools. Defendants named in the petition are the Caruthersville School District 18, its superintendent of schools and members of the board of education of the district.

The petition is in four counts. Count I seeks declaratory relief, Counts II and III injunctive relief, and Count IV recovery of sums paid as registration and course fees since December 1, 1972.

■ The petition challenges the following practices which defendants are alleged to employ:

(1) charging a registration fee for all children enrolled in school. These fees were $2.80 for grades 1 through 6, $3.80 for grades 7 and 8 and $6.50 for grades 9 through 12;

(2) charging fees in certain courses offered for academic credit. Examples alleged include $15.00 for driver education, $3.00 for art, and $2.00 for typing, home economics or band;

(3) requiring students to furnish certain supplies in some courses offered for academic credit;

(4) penalizing students by withholding grade reports and diplomas for non-payment of registration fees and course fees; and

(5) penalizing students by reducing grades and reducing participation in class for failure to furnish certain supplies in courses offered for academic credit.[1]

On February 10, 1976, plaintiffs filed a motion asking the court by order to permit them to maintain this suit as a class action

pursuant to Rule 52.08(b)(1) and (2).[2] The trial court never acted on that motion. It was still pending on June 8, 1976, when the petition was dismissed for failure to state a claim.

After plaintiffs took an appeal from the order dismissing their petition with prejudice, the State Board of Education was granted leave to intervene as appellants and it has filed a brief. In addition, the American Civil Liberties Union was granted leave to and has filed a brief *amicus curiae.*

*Do plaintiffs have standing to maintain this action?*

Before proceeding to consider whether the petition states a claim for relief, we consider first the contention, advanced in defendants' brief, that the trial court did not err in dismissing the suit because plaintiffs lack standing or capacity to maintain this action. They argue that the mandatory requirements of Rule 52.08 governing maintenance of class actions have not been met and that the allegations in the petition are insufficient to authorize a class action.

■ We conclude that this contention that the court was correct in dismissing the suit because plaintiffs lack standing is without merit. Plaintiffs brought this suit on behalf of themselves individually as well as seeking to maintain it on behalf of certain classes. They are entitled to proceed with the action in their individual capacities, even if they do not qualify to act on behalf of a class. *Kansas City Terminal Ry. v. Industrial Commission,* 396 S.W.2d 678 (Mo. 1965). Since the trial court did not consider or act upon the request that this case proceed as a class action and we act herein as a

---

1. Defendants argue that the petition does not allege sufficiently any denial of a free education and does not allege that there has been any denial of the benefits of education or the imposition of other penalties for non-payment of fees. Rather, says defendants, they allege only on information and belief that report cards and records are withheld and that grades are reduced and such allegations are asserted to be insufficient allegations of fact required by Rule 55.05.

This contention overlooks various allegations not stated on information and belief. In several paragraphs the petition specifically alleges that certain of the minors involved have had grades reduced or a final grade report withheld or other penalties. This is true in paragraphs 28, 29 and 35 of the petition.

2. All references to rules are to Missouri Rules of Court. V.A.M.R.

court of review, there is no issue before us as to whether the action may be maintained as a class action. That will be for consideration by the trial court on remand. In any event, standing of plaintiffs to maintain this action does not depend on the outcome of such request.

In further support of their argument that plaintiffs lack standing, defendants assert that the adult plaintiffs have not been appointed as next friends for the minor plaintiffs as required by Rule 52.02(a) and, hence, may not act in that capacity. Even if true, this would not mean dismissal of this case. Rule 52.02(m) provides that failure to appoint a next friend for a minor shall not invalidate the proceedings if the court finds that the interests of the minor were adequately protected. The adult plaintiffs are the natural guardians of their minor children and we can expect that they will protect the interests of their minor children.[3] See *State ex rel. Missouri Pac. R. R. v. Cox,* 306 Mo. 27, 267 S.W. 382 (banc 1924); *Jones v. Steele,* 36 Mo. 324 (1865); *Baker v. Mardis,* 221 Mo.App. 1185, 1 S.W.2d 223 (1928). In any event, the adult plaintiffs are entitled to maintain the suit on their own behalf and the petition cannot be dismissed on the basis that no minor plaintiff has standing to maintain the action.

*Do defendants' alleged practices of charging registration and course fees violate the requirement in Mo.Const. art. IX, § 1(a) that free public schools providing gratuitous instruction be established and maintained?*

On a motion to dismiss for failure to state a claim for relief, we accept as true the facts properly pleaded, giving the averments a liberal construction, and making those reasonable inferences fairly deducible from the facts stated. *Scheibel v. Hillis,* 531 S.W.2d 285, 289 (Mo. banc 1976). Thus, we test the sufficiency of the petition herein on the premise that defendants did charge and plaintiffs paid registration fees for students attending public schools, that plaintiffs also paid course fees and furnished materials in courses offered for academic credit, and that on some occasions students and parents were penalized for non-payment of registration or course fees or failure to furnish materials by having grade reports withheld or grades reduced.

Do these practices, admitted for purposes of this review, violate Mo.Const. art. IX, § 1(a)?[4]

The words "free public schools for the gratuitous instruction" of all children of school age were not included in the section on schools and education of Missouri's first constitution. In art. VI, § 1, of the Constitution of 1820, after providing that "[s]chools and the means of education shall forever be encouraged in this state", the legislature was required to establish township schools "as soon as practicable and necessary, where the poor shall be taught gratis". The constitution contained no directive to establish free public schools for all school children. It was later that the state accepted the Jeffersonian concept that education is fundamental to democracy and that the state should assume the primary educational role.[5] From time to time thereafter, the legislature enacted various laws designed to encourage education[6] but it was not until 1865, when a new constitution was adopted, that the state had a constitutional provision which *required* the legislature to "establish and maintain free schools for the gratuitous instruction" of all persons between 5 and 21 years of age.

---

3. On remand, steps can be taken to have plaintiff parents appointed as next friends for their respective children in accordance with the rule.

4. Mo.Const. art. IX, § 1(a), provides in pertinent part as follows:
"A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law. . . ."

5. 1 D. March, History of Missouri 724–725 (1967).

6. *Id.* at 720–733.

Mo.Const. art. IX, § 1 (1865). That same provision was repeated in the subsequent constitutions of 1875[7] and 1945,[8] the only difference being that the 1875 constitution specified instruction between 6 and 20 years of age and the 1945 constitution called for such education for persons within ages specified by law but not to exceed 21 years.[9]

We are concerned in this case with determining the meaning of the language "establish and maintain free public schools for gratuitous instruction". The key words therein are "free" and "gratuitous".

■ It is well established that in construing a constitutional provision, "words are to be taken in accord with their fair intendment and their natural and ordinary meaning". *Theodoro v. Department of Liquor Control,* 527 S.W.2d 350, 352–353 (Mo. banc 1975); *State ex rel. Heimberger v. Board of Curators of University of Missouri,* 268 Mo. 598, 188 S.W. 128, 130 (banc 1916). When language is plain and unambiguous, no construction is required. *Rathjen v. Reorganized School District R–II,* 284 S.W.2d 516, 523 (Mo. banc 1955). Applying these rules of construction, it is proper to look first at dictionary definitions. *State ex inf. Danforth v. Cason,* 507 S.W.2d 405, 409 (Mo. banc 1973).

Webster's Third New International Directory (1965) defines "free" as meaning "not costing or charging anything * * * given or furnished without cost or payment" and gives as an example "a free school". The word is defined in the Oxford English Dictionary (1961) as follows: "Giv-

en or provided without payment, costless, gratuitous. Of persons: (Admitted, etc.) without payment. * * * *Free school:* 'a school in which learning is given without pay'."

"Gratuitous" is defined in Webster's Third New International Directory (1965) as meaning "costing the recipient or participant nothing: FREE". The Oxford English Dictionary (1961) defines the term as "Freely bestowed or obtained; granted without claim or merit; provided without payment or return; costing nothing to the recipient; free".

■ Applying the foregoing definitions, it seems perfectly clear that the language in art. IX, § 1(a) provided that the legislature must establish schools to which admission is without charge and that instruction was to cost the students nothing. The use of both terms emphasized and underscored the intention that these schools were to provide free public education.

The only case in Missouri in which an appellate court has considered the meaning of language similar to that contained in art. IX, § 1(a) supports the foregoing analysis and conclusion.[10] *State ex rel. Roberts v. Wilson,* 221 Mo.App. 9, 297 S.W. 419 (1927).[11] In that case, an original proceeding in mandamus in the court of appeals, a parent sought to compel school officials to deliver to her daughter her graduation "certificate of attainment" and to release her grades which they had withheld because she had not paid a $20.00 tuition charge. Holding that the school board could not

7. Mo.Const. art. XI, §§ 1 and 3 (1875).

8. Mo.Const. art. IX, § 1(a).

9. In § 160.051 RSMo 1969, the legislature has specified that such gratuitous instruction shall be for persons between 6 and 20 years of age.

10. Actually, the case considered the language of Mo.Const. art. XI, § 1 (1875), but the words therein as to free public schools and gratuitous instruction were the same as in art. IX, § 1(a) of the 1945 constitution.

11. In addition to this case, there were two opinions by the Attorney General, No. 269 to Hon. Joseph W. Hill dated December 1, 1972,

and No. 66 to Dr. Arthur L. Mallory dated March 7, 1973. These opinions discussed various items including course fees, registration fees, and requiring students to furnish various materials. Both opinions reached the conclusion that art. IX, § 1(a) requires free public schools in which registration and course fees may not be charged, so long as the course is one for which academic credit is given, and that if materials such as materials in a home economics or art class are in a course for which academic credit is given, the student may not be required to furnish them.

lawfully make the charge or penalize the student for non-payment thereof, the court said:

"The right of children . . . to attend the public school established in their district for them is not a privilege dependent upon the discretion of any one, but is a fundamental right, which cannot be denied, except for the general welfare.

\* \* \* \* \* \*

"The law, of course, contemplates that the money necessary for the maintenance of a public school come from the revenue provided by law; that is, by taxation. . . . [If the school is public in character] . . . then neither the principal nor the directors had any lawful right to exact of relator the tuition demanded. . . . [N]o right existed in the board, or any one, to require payment of a tuition fee by relator." 297 S.W. at 420.

There are many cases in other states which consider the validity of registration fees, course fees, fees for textbooks and course materials and rules which require students to furnish various kinds of materials and equipment. Many of these decisions are discussed and analyzed in Note, 16 Washburn L. Journ. 439 (1977); Annot., 41 A.L.R.3d 752 (1972); and Note, Wis.L.Rev. 971 (1971). Not all states have constitutional provisions comparable to the one which we are called upon to interpret. As a matter of fact, one author has observed that twenty-two states do not have a constitutional mandate for free schools. Note, Washburn L. Journ. at 448. Obviously, it is not feasible or necessary that we undertake in this opinion to discuss all of these out-of-state cases. We will make reference to a few to illustrate the varying results reached.

In *Dowell v. School Dist. No. 1,* 220 Ark. 828, 250 S.W.2d 127 (1952), the court considered a case wherein it was contended that a registration fee established by the school district was prohibited by art. 14, § 1 of the Arkansas constitution which provided as follows:

"Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction."

That provision is remarkably similar to our own art. IX, § 1(a). The court concluded that plaintiffs could not maintain the action because one of them had no child in school and the other two had never paid the registration fee and their children had attended school and received books the same as other children. Even so, the court went on to state that under the foregoing provision for free schools providing gratuitous instruction, no registration fee could be charged.

*Paulson v. Minidoka County School District No. 331,* 93 Idaho 469, 463 P.2d 935 (1970), involved interpretation of Ida.Const. art. IX, § 1, which provides as follows:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."

The school district required students to pay an annual $25 textbook and activity fee. Students were permitted to attend school and to graduate even if they did not pay the fee, but payment was required as a condition to receiving a transcript of courses studied and grades received. The court held that the fee contravened the constitutional provision for free common schools. Textbooks were considered to be necessary elements of the school's activity, indistinguishable from such things as teachers' salaries and building maintenance.

In *Bond v. Public Schools of Ann Arbor School District,* 383 Mich. 693, 178 N.W.2d 484 (1970), plaintiffs sought to have students enrolled without paying fees for "books and supplies". The court held that as used in the constitutional provision requiring "a system of free public elementary

and secondary schools",[12] the word "free" "clearly means without cost of charge and must have been so commonly understood by the people". 178 N.W.2d at 487. The court then considered "whether books and supplies are necessary to a system of free public elementary and secondary schools". *Id.* Reviewing the *Paulson* case and recognizing the test adopted therein, the court invalidated the fees, saying:

> "Applying either the 'necessary elements of any school's activity' test or the 'integral fundamental part of the elementary and secondary education' test, it is clear that books and school supplies are an essential part of a system of free public elementary and secondary schools." *Id.* at 488.

Montana had a constitutional provision which provided for a system of "public, free common schools". Mont.Const. art. XI, § 1 (1889). In *Granger v. Cascade County School Dist. No. 1*, 159 Mont. 516, 499 P.2d 780 (1972), parents attacked fees and charges for various materials as well as a requirement that students furnish certain supplies and equipment of their own. In resolving the issues, the court said:

> "We believe that the controlling principle or test should be stated in this manner: Is a given course or activity reasonably related to a recognized academic and educational goal of the particular school system? If it is, it constitutes part of the free, public school system commanded by Art. XI, Sec. 1 of the Montana Constitution and additional fees or charges cannot be levied, directly or indirectly, against the student or his parents. If it is not, reasonable fees or charges may be imposed.
>
> "In this manner a degree of flexibility is insured. The school district may thus define its own academic and educational goals and the courses and activities that will carry credit toward graduation within the limits provided by law. At the same time, the individual student has a freedom of choice, within the limits of the educational framework so established, to pursue a course of study directed toward business, a trade, college preparatory, commercial, secretarial, or some other goal without regard to his financial ability to pay additional fees or charges." 499 P.2d at 786.

In *Board of Education v. Sinclair*, 65 Wis.2d 179, 222 N.W.2d 143 (1974), the court considered whether certain fees were permissible under a constitutional provision that "schools shall be free and without charge for tuition". Wis.Const. art. X, § 3 (as amended 1972). In this instance, it was the school district suing the parent for the fees for the use of books and incidental educational supplies. The court concluded that the schools may charge such fees if authorized by statute, saying, "We are persuaded that when the framers of our constitution used the phrase 'free and without charge for tuition to all children  .  .  .,' the word 'free' meant without cost for physical facilities and equipment; 'without charge for tuition' meant there should be no fee charged for instruction;". 222 N.W.2d at 145. In so concluding, the court, in addition to looking at dictionary definitions and the plain meaning in the context in which used, looked at the practices in existence which they could reasonably presume were known to the framers in 1848 when the constitutional provision was framed and adopted.

In so holding, the Wisconsin court adopted the reasoning employed in *Hamer v. Board of Education of School Dist. No. 109*, 47 Ill.2d 480, 265 N.E.2d 616 (1970), in construing a constitutional provision which provided for "free schools, whereby all children of this state may receive a good common school education". Ill.Const. art. VIII, § 1 (1870).

See also *Marshall v. School Dist. Re #3 Morgan County*, 553 P.2d 784 (Colo. banc1976); *Vandevender v. Cassell*, 208 S.E.2d 436 (W.Va.1974); *Chandler v. South Bend Community School Corp.*, 312 N.E.2d 915 (Ind.App.1974).

12. Mich.Const. art. VIII, § 2 (1963).

We are not persuaded by any of the cases decided in other states that we should interpret art. IX, § 1(a) as directing other than that there must be public schools in Missouri for which there is no admission charge (whether called tuition, registration fee or some other name) and no charge for instruction, which means no course fees. The clear meaning of the words used in art. IX, § 1(a), their relationship to each other and the language of the introductory portion of the section all indicate that this is the meaning intended. We have adopted in Missouri the rule of construction applied in *Board of Education v. Sinclair, supra,* to the effect that the court "should undertake to ascribe to words the meaning which the people understood them to have when the provision was adopted," *State ex inf. Danforth v. Cason,* 507 S.W.2d at 408, but nothing has been suggested to indicate that the framers of this constitutional provision intended the words to mean other than as we have interpreted them. Accordingly, we hold that art. IX, § 1(a) prohibits a school district from charging registration fees or fees in courses for which academic credit is given.[13]

Defendants urge as another basis for upholding the fees charged in this case the proposition that the statutory history of Missouri indicates that the free public school provision in art. IX, § 1(a) is not absolute. In support of that contention, they cite various statutory provisions which authorize school districts to charge tuition. They cite §§ 162.940, RSMo Supp.1975,[14] 167.121, RSMo Supp.1975, 167.131, RSMo Supp.1975, and 167.151, all of which authorize a school district in certain situations to charge tuition but none support defendants' position in this case. Sec. 162.940, RSMo Supp.1975, permits boards of education of special school districts to charge tuition to resident students who are over 21 years of age and to students who are not residents of the district. Sec. 167.121, RSMo Supp.

1975, permits a county superintendent to assign a student to another school district if a school in the latter is more accessible for the public. When that is done, the non-resident tuition charged for the student is paid by the school district in which he resides. Sec. 167.131, RSMo Supp.1975, obligates a school district which does not operate a high school to pay tuition for its high school age students to attend high school in another district. Finally, § 167.151 authorizes a school board to admit pupils who are not entitled to free education and to charge them a tuition fee. No one of these sections is inconsistent with art. IX, § 1(a) as we have construed it. Under them, school districts only charge tuition for nonresident students, who are not the obligation of that district, and students who are not entitled to the benefits of the free education directed by art. IX, § 1(a). For example, they are over 21.

The other sections cited by defendants, *viz.,* 167.181, RSMo Supp.1975, 167.211 and 167.231, RSMo Supp.1975, relate to immunization of students, school lunch programs and transportation of students. None conflict with our ruling that defendants may not charge registration fees or course fees in courses for which academic credit is given.

As still another basis for sustaining the fees charged by defendant district, it is urged that the registration fees and course fees charged are reasonable and that they are so small as to be *de minimus.* On that basis, it is argued that they do not violate art. IX, § 1(a). We reject this argument. The issue is not whether the fees are reasonable. It is whether they are permissible, and we have held that they are not. Nor can we sustain them on the theory that they are *de minimus.* Plaintiffs' petition alleges that the fees collected between December 1, 1972, and the date this suit was filed amount to $35,000. This is not *de*

---

13. We do not have before us and do not consider whether course fees would be permissible in classes or programs offered which are entirely optional and for which no academic credit is given.

14. All statutory references are to RSMo 1969 unless otherwise indicated.

*minimus.* Even if they could be so described, that would not excuse a violation of art. IX, § 1(a). As a three judge court said in *United States v. Texas*, 252 F.Supp. 234, 254 (W.D.Tex.), aff'd, 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434 (1966), in declaring a poll tax unconstitutional:

> "If the State of Texas placed a tax on the right to speak at the rate of one dollar and seventy-five cents per year, no court would hesitate to strike it down as a blatant infringement of the freedom of speech. Yet the poll tax as enforced in Texas is a tax on the equally important right to vote."

The foregoing language was noted with approval in *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 665 n. 2, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

Having held that the registration and course fees charged by defendants are prohibited by Mo.Const. art. IX, § 1(a), we need not and do not reach or decide plaintiffs' contention that the fees also violate the equal protection clause of Mo.Const. art. I, § 2 and U.S.Const. amend. XIV.

*Does defendants' alleged practice of requiring students to furnish certain materials and equipment for use in classes and activities violate Mo.Const. art. IX, § 1(a)?*

Plaintiffs' petition alleges that certain of the minor defendants have been required to furnish steno pads for a shorthand course, notebooks for an English course and gym clothing for a gym class. It is plaintiffs' position that art. IX, § 1(a) requires that such materials be furnished without charge.

We have concluded not to undertake to resolve this question on this appeal. Since we already have held that the petition states a claim for relief as to registration fees and course fees, it is not necessary, as a condition to deciding whether the petition was dismissed erroneously, to decide whether a claim is stated on the basis of students being required to furnish materials and equipment. Under such circumstances it is better that we postpone for determination on a record after trial the question of the right to require students to furnish materials and equipment for courses in which they are enrolled.

Some of the decisions in other states from which we have quoted disclose that some states have held that books and school supplies are as much a part of providing schools as teachers and buildings. Others have distinguished between fees for enrollment or instruction and materials and equipment, holding that a constitutional requirement of free schools does not require that such things as textbooks, supplies and equipment be furnished. Some states, as previously noted, have based this determination on whether such items were considered to be a part of free schools when the constitutional mandate therefor was adopted. Postponing a decision with reference to supplies and equipment will enable the parties to offer proof as to the kind and character of such materials and equipment furnished and whether they are an integral part of free public schools in which there is gratuitous instruction. They can offer such proof as may be available as to whether at the time the constitutional requirement was adopted, the people drafting and adopting the provision understood the language to encompass such things as materials and equipment. If, after the case is tried, it is determined that art. IX, § 1(a) permits the defendants to require students to furnish materials and equipment, the court can determine whether as to any plaintiffs such requirement would result in a denial of equal protection under the state or federal constitutional provisions.

*Defendants' contention on appeal that the individual defendants are immune from suit.*

■ Defendants make the point in their brief that,

> "The trial court did not err in sustaining defendants' motion to dismiss as to the individual defendants because school board directors are immune from personal liability in the absence of malice or bad faith and no such charge is made."

**564**

The transcript on appeal clearly shows that defendants filed no motion seeking a dismissal of this case as to the individual defendants. No contention that they were immune to suit appears anywhere in the transcript. The trial court did not dismiss the petition as to individual defendants. Hence, this point by defendants, consisting of less than a half page of discussion in their brief, is not before us on this appeal.

Count IV of the petition seeks recovery of fees paid since December 1, 1972. Recovery is sought from all defendants, including the school district. Defendants' brief makes no contention that Count IV does not state a claim against the school district. Under these circumstances, the trial court was not justified in dismissing it for failure to state a claim.

The question of whether plaintiffs state a claim for relief against the individual defendants is not before us and we do not decide it on this appeal. On remand, that issue can be raised and if a judgment is obtained by plaintiffs, defendants will have the right to contest whether plaintiffs state and whether they prove a claim against the individual defendants.

Reversed and remanded.

All concur.