CITY OF MANITOWOC, Respondent, vs. TOWN OF MANITOWOC RAPIDS, Appellant.

*March 8—April 11, 1939.*

For the appellant there were briefs by *Healy & Joyce* of Manitowoc, and oral argument by *Kenneth C. Healy* and *John J. Healy.*

*Edward Meyer* of Manitowoc, for the respondent.

WICKHEM, J.    The sole question upon this appeal is the constitutionality of secs. 41.15 (1), 41.16, 41.18, and 41.19, Stats.    Generally speaking, the sections set up and provide for a system of vocational education.    Sec. 41.15 (1) provides in substance that every municipality of over five thousand inhabitants shall have, and every municipality of less than that population may have, a local board of vocational education with the duty of fostering and maintaining voca-

tional schools. Sec. 41.16 (1) provides that such boards shall annually report to the municipal clerk before September the amount of money required for the next fiscal year for support of such schools. Sub. (2) provides that municipalities shall levy a tax for the sum required by the local board, not however to exceed one and one-half mills on the dollar. Sec. 41.18 provides such schools shall be open to all residents of the cities in which they are located, who are fourteen years of age and not by law required to attend other schools, and to all persons over fourteen employed in such municipalities but who are residents of other municipalities maintaining vocational schools, provided such persons present a written approval by the local board of their home municipality. It is also provided that these schools shall be open to all persons fourteen years of age who reside in other municipalities having local board of vocational education, but which do not offer the courses desired by such persons. With respect to this class it is also provided that they must present the written approval of their board. Finally, the section provides that any person over fourteen, who resides in a municipality not having vocational schools and who is otherwise qualified to pursue the course of study may, with the approval of the board of vocational education maintaining the school which he wishes to attend, be admitted to the school. Sec. 41.19 provides that the local board of vocational education is authorized to charge tuition to nonresident pupils. It also provides the procedure by which such charges shall be made and brought to the attention of municipalities liable for the tuition. In substance, the statute imposes liability for tuition upon the municipality of residence.

It is contended that these sections violate sec. 3, art. X, Const.; that they deprive municipalities subject to the liability for tuition of property without due process; and that they constitute a denial of the equal protection of the laws. The principal claim of the defendant is that the establishment

of vocational schools, on the scale contemplated by these sections, is beyond the authority of the municipalities, and that the legislature has not the power to vest municipalities with authority to establish such schools. Sec. 3, art. X, Const., reads as follows:

"The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of four and twenty years; and no sectarian instruction shall be allowed therein."

It is contended that these mandatory provisions imply a limitation upon the power of the legislature, and that this power is no more extensive than the commands of the section. Defendant concedes that there is no limitation upon the power of the legislature to establish vocational schools. It is claimed, however, that there is such a limitation upon the power to maintain such schools free to students outside the ages referred to in section 3, and that such limitation is implied in the constitutional provision "and such schools shall be free and without charge for tuition to all children between the ages of four and twenty." Defendant's position is that the constitution not only guarantees free education to those between the ages of four and twenty but limits such education to persons between those ages. At the outset, we must recur to fundamental principles and recall that when dealing with the state constitution as contrasted with the federal constitution the search is not for a grant of power to the legislature but a restriction thereon. It was pointed out in *Outagamie County v. Zuehlke,* 165 Wis. 32, 35, 161 N. W. 6, that:

"It is established by the decisions of this court that our state constitution is not so much a grant as a limitation of power, therefore the state legislature has authority to exercise any and all legislative powers not delegated to the federal government nor expressly or by necessary implication prohibited by the national or state constitution."

See also *State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 193 N. W. 499; *Pauly v. Keebler,* 175 Wis. 428, 185 N. W. 554.

The question is whether sec. 3, art. X, Const., requiring the legislature to provide free education for those between the ages of four and twenty has impliedly prohibited free education for those beyond the age of twenty or under the age of four. We are unable to find in this section any such implied prohibition. The purpose was not to prevent free education beyond the ages specified, but to make it mandatory for persons within those ages. The purpose was not to grant a power to the legislature to establish schools, for this power would exist without grant, but to compel the exercise of the power to the extent designated. An implied prohibition cannot be constructed out of such materials.

These views are in accord with two cases which we consider to represent a proper construction of similar constitutional provisions. The case of *In re Kindergarten Schools,* 18 Colo. 234, 235, 32 Pac. 422, involved the construction of the following constitutional provision:

"The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously. . . ."

In holding that the legislature had power to establish a system of kindergarten education for children under the age of six, the court said:

"Unless, therefore, the constitution in express terms or by necessary implication limits it, the legislature may exercise its sovereign power in any way that, in its judgment, will best subserve the general welfare. Read in the light of this rule of interpretation, and the wise and liberal policy of the state in educational matters, the section is clearly mandatory, and requires affirmative action on the part of the legislature

to the extent and in the manner specified, and is in no measure prohibitory or a limitation of its power to provide free schools for children under six years of age, whenever it deems it wise and beneficial to do so."

In the case of *School District No. 62, Craig County, v. School District No. 17, Craig County*, 143 Okla. 136, 137, 287 Pac. 1035, the constitutional provision involved was as follows:

"The legislature shall provide for the compulsory attendance at some public or other school, unless other means of education are provided, of all the children in the state who are sound in mind and body, between the ages of eight and sixteen years, for at least three months in each year."

The case involved the power of the legislature to provide for free tuition to persons over the age of twenty-one years. The court said:

"The provisions of the constitution directing the legislature to establish and maintain a system of free public schools wherein all the children of the state may be educated is a command to the legislature, and cannot be construed as a restriction or limitation on its power to provide free schools for those who may not come within the strict classification of children as we usually understand the word 'children' to mean when considered in relation to the age of persons."

The next question is whether the statutes in question deprive municipalities of property without due process. The basis for this contention is that unless municipalities who do not maintain vocational schools are to be permitted to pass upon the qualifications of applicants who propose to go to such a school in another town and to grant or withhold their approval in their discretion, there is a deprivation of the property of the municipality or its taxpayers without due process. The contention cannot be sustained. The legislature proposes to make vocational education available without tuition to all persons described in the statute. Municipalities of less than five thousand population must either maintain

vocational schools or pay tuition in such schools maintained by other municipalities for the attendance there of its qualified residents. Municipalities which do maintain vocational schools are naturally permitted some power to withhold approval of students going to another town to get vocational training which may be available at home. Municipalities which maintain no vocational schools necessarily are not given this privilege because there is no basis upon which their discretion may operate. They offer no facilities and could only veto upon some undisclosed standard or basis the right to vocational training which the statute gives irrespective of residence. A municipality may either maintain vocational schools or pay tuition elsewhere. Having rejected one method of discharging its duty, it is bound to take the other. We see nothing in this that denies due process to defendant or its taxpayers. It is quite a usual provision with respect to the more conventional type of school and has been sustained as a valid exercise of legislative power. *Columbus v. Fountain Prairie*, 134 Wis. 593, 115 N. W. 111.

The contention that the law constitutes a denial of equal protection is likewise fallacious. All municipalities have imposed upon them the duty of furnishing this type of education by one of two methods, and the choice of methods is theirs to exercise. All persons within the age limits specified are equally entitled to take advantage of the facilities of such schools. We see nothing in this that is discriminatory in a constitutional sense. Certainly the fact that the law does not also furnish free training leading to all business and professions creates no constitutional objections.

A great many of the objections in defendant's briefs call for no reply here. They should properly be addressed to the legislature since they concern the wisdom and sound policy of the law as enacted. In this field we have no jurisdiction, and even the expression of an opinion would be an impertinence if not a usurpation of power.

*By the Court.*—Judgment affirmed.