THE HONORABLE, THE ASSEMBLY Legislature
By 1975 Assembly Resolutions 17 and 18, you have requested my opinion as to whether any provision of the Wisconsin Constitution prohibits the charging of tuition to students at vocational, technical and adult education schools. Further, and apparently on the assumption that the charging of tuition in some instances may be unconstitutional, 1975 Assembly Resolution 17 *Page 25 
asks specifically whether it is nevertheless constitutional to charge tuition for post-secondary, adult, vocational or hobby courses.
It is my opinion that neither Art. X, sec. 3, Wis. Const., nor any other constitutional provision prohibits the charging of tuition for any course of instruction offered at a school in the system of vocational, technical and adult education operated pursuant to ch. 38, Stats. The charging of tuition at such schools, and the manner and extent whereby such charges are to be made, is a matter of policy which the legislature is free to determine in the exercise of its legislative power under Art. IV, sec. 1, Wis. Const.
The fundamental underlying question you raise is the extent to which the legislature may exercise its powers. In contrast to the federal constitution, the constitutions of the several states are not the source of legislative power but rather limitations upon the exercise of such powers. Therefore, the Wisconsin Legislature has broad authority and discretion in the exercise of all legislative powers not delegated to the federal government unless expressly or impliedly prohibited or limited in such exercise by the constitutions of the United States or Wisconsin. OutagamieCounty v. Zuehlke (1917), 165 Wis. 32, 35, 161 N.W. 6; Manitowocv. Manitowoc Rapids (1939), 231 Wis. 94, 97, 285 N.W. 403.
Article X of the Wisconsin Constitution deals with the subject of education. The only reference to tuition therein is found in sec. 3 which provides, in part:
 "The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of 4 and 20 years; . . . "
This provision is a limitation upon legislative power only to the extent that it mandates the legislature to establish "district schools" which must be "free and without charge for tuition to all children between the ages of 4 and 20 years." As the Wisconsin Supreme Court observed in Manitowoc v. Manitowoc Rapids
(1939), 231 Wis. 94, 98, 285 N.W. 403:
 "The purpose [of Art. X, sec. 3, Wis. Const.] was not to grant a power to the legislature to establish schools, for this *Page 26 
power would exist without grant, but to compel the exercise of the power to the extent designated." (Emphasis supplied.)
The constitutional mandate for an education "free and without charge for tuition" is subject to two conditions. First, such education is constitutionally required only for children between the ages of 4 and 20 years. Second, such education is required only within the system of "district schools" which the legislature must, under the constitution, establish.
Determinative of your question, then, is whether the schools which comprise the vocational, technical and adult education system are "district schools" within the meaning of Art. X, sec.3, Wis. Const.
I.
The constitutional meaning of the term "district schools" as it is used in Art. X, sec. 3, must be ascertained by reference "to the history of the times, the state of society at the time . . . the constitution was framed and adopted, and to prior well-known practices and usages . . ." State ex rel. Zimmerman v. Dammann
(1930), 201 Wis. 84, 89, 228 N.W. 593; Board of Education v.Sinclair (1974), 65 Wis.2d 179, 222 N.W.2d 143; 57 OAG 45 (1968). Previous analysis of the available historical materials has led the Supreme Court to conclude that Art. X, sec. 3, Wis. Const., was not intended to mandate any particular form of school district organization but rather to prescribe a minimum standard of instruction:
 "An examination of the debates in the conventions that framed our present constitution and the constitution of 1846 (which contained a similar provision [to Art. X, sec. 3, Wis. Const.]) discloses that the members of those conventions, when they were framing the article relating to schools, were concerned, not with the method of forming school districts, but with the character of instruction that should be given in those schools after the districts were formed, — with the training that these schools should give to the future citizens of Wisconsin." State ex rel. Zilisch v. Auer (1928), 197 Wis. 284, 289-290, 221 N.W. 860. *Page 27 
In West Milwaukee v. Area Board of Vocational, Technical andAdult Education (1971), 51 Wis.2d 356, 377, 187 N.W.2d 387, appeal dismissed 404 U.S. 981, 30 L.Ed.2d 364, 92 S.Ct. 452, the Supreme Court observed in dicta that "the constitution neither requires nor prohibits the creation of vocational schools, . . ." This observation is supported by the historical record.
In the territorial period, the educational system in Wisconsin consisted of local schools (often referred to interchangeably as "district schools," "common schools," and "primary schools"), academies, and normal schools. Patzer, Public Education inWisconsin (1924), 6-8, 9, 27, 199-206; Jorgenson, The Founding ofPublic Education in Wisconsin (1956), 15-49, 83-86; See Journaland Debates, Constitutional Convention 1847-1848, 263-265, 341-345. The local schools were organized on a district basis and financed in part by property taxes levied throughout the district, in part by per capita charges made by the district to each student, and in part by charges made directly to the student or his family by the teacher. Board of Education v. Sinclair
(1974), 65 Wis.2d 179, 183, 222 N.W.2d 143. Normal schools and academies were essentially private schools which were financed through tuition charges. Patzer, supra; Jorgenson, supra.
The education provided at the local level was very rudimentary. There is no indication that the common or district schools of the territorial period provided anything akin to vocational or technical education. Some adults, particularly immigrants, did attend the local schools but apparently for the purpose of obtaining a basic education. Certainly the use of these schools by adults was not for the purposes of "adult education" in the modern sense. Journal and Debates, Constitutional Convention1847-1848, 341-345; Nesbit, Wisconsin: A History (1973), 230
Academies and normal schools provided schooling for those who wished further education beyond the basic level. Normal schools were basically teacher training schools, while academies educated those bound for further education at a university or college. Jorgenson, supra; Patzer, supra. The framers recognized a clear distinction between the education provided at the district level and that provided in academies and normal schools. The latter were clearly thought to serve elitist and privileged interests because, unlike the district schools, they served those with an interest in *Page 28 
advanced and more specialized education and were not usually financed publicly to any appreciable degree.
A review of the proposals of the standing committee on education and school funds of the 1847-48 convention discloses an intention on the part of the committee to prepare an education article for the constitution which would mandate a complete system of education from the "district schools" through the university. That comprehensive system contemplated constitutionally mandated academies and normal schools in addition to district schools and the university. The convention, however, eliminated the mandatory provisions with respect to academies and normal schools and limited the constitutional mandate to the establishment of district schools and a state university. Art. X, secs. 3, 6, Wis. Const.; Journals andDebates, Constitutional Convention 1847-1848, 263-265, 341-345.
The "character of instruction" provided by the district school during the territorial period was basic education publicly financed, at least in part. Therefore, the constitutional requirement that free district schools be established is essentially a requirement that fundamental basic education be provided by the state "free and without charge for tuition." Beyond this requirement, the legislature is free to establish additional education programs without restriction with respect to the manner in which those programs are to be financed. Manitowocv. Manitowoc Rapids, supra, at 97; West Milwaukee v. Area Boardof Vocational, Technical and Adult Education, supra, at 377.
Vocational education in even its most incipient form was unknown at the time Art. X, sec. 3 Wis. Const., was drawn. Cf.Maxcy v. Oshkosh (1910), 144 Wis. 238, 252-253, 128 N.W. 899. The development of vocational education began with the pioneering programs established by the Wisconsin Legislature at the start of the Twentieth Century. See Grieber. "Training our Citizens to Earn a Living," 1956 Wisconsin Blue Book, 107-112. These programs have been expanded to meet the needs for not only vocational and technical education but also continuing and adult education. Today they include instructional offerings ranging from high school alternative, and collegiate transfer programs, as well as post-secondary full and part-time programs in the trades and *Page 29 
technical occupations to both vocationally oriented and hobby and avocational continuing programs. See. 38.001, Stats.
The diverse programs offered by the vocational, technical and adult education system are available only for persons age 16 years and older. Sees. 38.02, 118.15 (1) (b), Stats. Attendance at a school within this system presumes prior basic schooling. The programs offered go well beyond basic primary education and are much more akin to the course offerings (If the territorial normal school or academies than to the basic education provided by the territorial common or district school.
It is clear that the "character of instruction" provided by the vocational, technical and adult education system is beyond the fundamental level of education required by Art. X, see. 3, Wis. Const. Fundamental education is provided in Wisconsin by a public school system consisting of "elementary and high schools supported by public taxation," sec. 115.01 (1), Stats., which is under the supervision of the Superintendent of Public Instruction. While the content of instruction provided in both the public and vocational school systems is always changing to meet new needs, the essential difference in the "character of instruction" offered by each system (fundamental versus advanced) remains unchanged. Therefore, the schools within the vocational, technical and adult education system are not, unlike the schools in the public school system, subject to the restrictions of Art.X sec. 3, Wis. Const.
This conclusion is not inconsistent with the holding in Maxcyv. Oshkosh (1910), 144 Wis. 238, 252-25.3. 128 N.W. 899. That ease dealt with the enforceability of a condition placed upon a charitable bequest setting up a "manual training" school within the public school system of the city of Oshkosh. The condition stipulated that tuition be charged at the vocational training school established by the bequest. The Supreme Court held that condition unenforceable because it would have required the public school system to charge tuition contrary to the mandate of Art.X, sec. 3, Wis. Const. The case dealt with the content of instruction within the public school system and simply stands for the proposition that the public school system and its constantly evolving instructional program is subject to Art. X, sec. 3, Wis. Const. *Page 30 
Nothing in this opinion is meant to suggest that there may not be some overlap between the public and vocational school systems with respect to the content of instruction. Similar programs now exist in both systems and will likely continue to do so in the future. The determinative factor, insofar as the requirements of Art. X, sec. 3, Wis. Const., are concerned, however, is the difference between the basic missions of each system. Those missions — the "character of instruction" in the respective systems — determine the constitutional issue.
II.
While I believe the foregoing analysis is dispositive of your question, certain arguments to the contrary should be considered because of the affect they have on the validity of the present organization of the vocational, technical and adult education system.
That system is, and has been since its inception, organized on a district basis and financed primarily by a local property tax. Ch. 122, Laws of 1907; ch. 616, Laws of 1911; ch. 494, Laws of 1917; ch. 38, Stats. Until 1917, vocational education was under the supervision of the Department of Public Instruction, but by ch. 494, Laws of 1917, a separate system was established which has evolved as today's vocational, technical and adult education system. See generally, Grieber, "Training our Citizens to Earn a Living," 1956 Wisconsin Blue Book, 107-112; 1973 Wisconsin BlueBook, 429-433.
At present, the entire state is organized into vocational, technical and adult education districts which include "one or more counties, municipalities or school districts in any contiguous combination." Sec. 38.06 (1), Stats. The schools within each district are operated and primarily controlled by a district board. See secs. 38.12 (1), 38.14, Stats. Financing is primarily dependent upon a property tax levied upon the taxable property within each district by the respective district boards. Sec. 38.16, Stats.
The argument has been advanced that the district form of organization chosen by the legislature for vocational education is determinative of the question whether vocational schools are "district schools" within the meaning of Art. X, sec. 3, Wis. Const. This argument is unconvincing for two reasons. *Page 31 
First, it is based upon the untenable assumption that Art. X, sec. 3, Wis. Const., does not have any meaning independent of that which the legislature may, from time to time, give to it. Aside from the fact that a statutory definition of a term does not control its constitutional meaning, see State ex rel.Froedtert G. M. Co. v. Tax Comm. (1936), 221 Wis. 225, 233,265 N.W. 672, if such were the case, Art. X, sec. 3, Wis. Const., would be without purpose since the legislature could avoid it merely by organizing any school system (vocational or public) in the state on other than a district basis. This would be clearly inconsistent with the purpose of that provision which is to act as a limitation upon the exercise of legislative power. Manitowocv. Manitowoc Rapids (1939), 231 Wis. 94, 285 N.W. 403.
Second, this argument ignores previous judicial determinations that Art. X, sec. 3, Wis. Const., relates not to the form of school district organization, but rather to the "character of instruction" that must be afforded the citizens of this state by the legislature. State ex rel. Zilisch v. Auer (1928), 197 Wis. 284,289-290, 221 N.W. 860; Joint School District v. Sosalla
(1958), 3 Wis.2d 410, 420, 88 N.W.2d 357. While the form of school district organization may and should enhance, it does not determine the substance of instruction offered.
Likewise unconvincing is a corollary argument that the legislative designation of vocational schools as "district schools" in sec. 66.01 (14), Stats., resolves the constitutional issue. Section 66.01 (14), Stats., provides:
 "All laws relating to public instruction, pursuant to secs. 1, 2, 3, 4 and 5 of article X of the constitution, remain and shall continue in force for the establishment, administration and government of the district schools as heretofore, until amended or repealed by the legislature. The term `district schools' as here used, in addition to common schools includes, among others, any and all public high schools, trade or vocational schools, auxiliary departments for instruction of pupils who are deaf or of defective speech or blind, and truancy or parental schools."
This provision was first enacted by ch. 325, Laws of 1925, and except for renumbering has not since been modified. The second sentence in sec. 66.01 (14), Stats., is surplusage if vocational *Page 32 
schools are "district schools" within the meaning of Art. X, sec.3, Wis. Const. The addition of the second sentence reflects the continuing understanding of the legislature that vocational schools are not so included.
Further, this provision, together with the other subsections of sec. 66.01, Stats., is the enabling legislation for the "home rule" amendment to the constitution adopted in 1924. Art. XI, sec. 3, Wis. Const. See Note, 3 Wis. L. Rev. 423, 427 (1924-26).
The purpose of sec. 66.01 (14), Stats., was to except the entire subject of education from municipal home rule. In State exrel. Harbach v. Mayor (1926), 189 Wis. 84, 90, 206 N.W. 2101 the Supreme Court held this exception was declarative of the constitutional power of the legislature to deal with education as a matter of statewide rather than local concern. The broad definition of "district schools" in sec. 66.01 (14), Stats., therefore, does not serve any purpose except to declare that all matters pertaining to education, including matters both required and permitted under Art. X, sec. 3, Wis. Const., are beyond the scope of municipal home rule powers.
"The decision to provide vocational education is a political determination to be made by the legislature, . . ." WestMilwaukee v. Area Board of Vocational, Technical and AdultEducation (1970), 51 Wis.2d 356, 378, 187 N.W.2d 387. Included in that political determination are not only matters of financing, but also matters of organization. The organization of the vocational, technical and adult education system on a district basis does not make the schools in that system "district schools" within the meaning of Art. X, sec. 3, Wis. Const. Therefore, the legislature may decide to charge tuition from students attending schools within the vocational, technical and adult education system without necessarily first changing the organizational structure of that System.
BCL:DJH *Page 33