ZWEIFEL, and wife, Appellants, v. JOINT DISTRICT No. 1, BELLEVILLE, and another, Respondents.

*No. 76–141. Submitted on briefs March 3, 1977.—*
*Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 822.)

For the petitioners-appellants the cause was submitted on the brief of *Ward I. Richter* and *Bell, Blake & Metzner, S. C.* of Madison.

For the respondents the cause was submitted on the brief of *Paul C. Gartzke* and *Bieberstein, Cooper, Bruemmer, Gartzke and Hanson* of Madison.

CONNOR T. HANSEN, J.   The administration of the school district is the province of the school board, and for the purpose of this opinion the school district and the school board will be referred to jointly as the respondents.

The respondents declined to admit Kyle to kindergarten, and the substance of the appellants' argument is that such action by the respondents is violative of art. X, sec. 3, of the Wisconsin Constitution, which provides:

*"District schools; tuition; sectarian instruction; released time.* SECTION 3. [As amended April, 1972] The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of 4 and 20 years; and no sectarian instruction shall be allowed therein; but the legislature by law may, for the purpose of religious instruction outside the district schools, authorize the release of students during regular school hours. . . ."

Pursuant to school district rule, the respondents required that children seeking admission as kindergarten students in the district attain the age of five years on or before December 1st of the year in which admission was sought. Kyle was born February 4, 1972, and, therefore, would not attain the age of five years until February 4, 1977. The appellants, nevertheless, sought to have Kyle admitted to kindergarten in the fall of 1976.

Prior to submitting the question of early admission to the school board, the appellants consulted with the superintendent of schools of the district. Kyle was observed, tested and examined by a multidisciplinary team, the school psychologist, and a physician. There appears to be no question that Kyle was an exceptional child and in good physical health. His parents were both school teachers and had been instrumental in the organization of a prekindergarten school in Belleville. It was their opinion that Kyle was mentally, socially and emotionally ready for kindergarten. It was the opinion of the first-grade teacher that he should not be granted early admission to kindergarten. Under somewhat different circumstances, the respondents had previously granted early admission to Kyle's older brother.

Because of Kyle's age, the district would not receive state aid for him for either kindergarten or first grade if he was admitted. The appellants offered to make a contribution to the school district in an amount equivalent to the state school aid that would have been lost by the school district for a period of two years. We consider this to be only an expression of good intention. The appellants cannot force the respondents to accept a contribution; however, we do not consider this to be material to the resolution of the ultimate issues presented.

In June, 1976, at the appellants' request, the superintendent of the district appeared before the school board and presented the case for the early admission of Kyle. The board was supplied with the results of the pre-kindergarten screening tests. The board denied the request for Kyle's early admission.

In July, 1976, Mrs. Zweifel and her attorney appeared before the board to renew the request for early admission. On roll call vote, the request was again denied. At a third meeting held in August, 1976, the board again denied Kyle's entrance into kindergarten. The denial

was based upon five reasons as expressed by the superintendent and concurred to by Francis Fahey, president of the school board: (1) The school district, under the provisions of sec. 121.07(1)(a) and (b), Stats., would not receive state aid for Kyle's attendance;[1] (2) the board was concerned with setting a precedent for other early admission requests; (3) the board was concerned with Kyle's social and emotional readiness for kindergarten; (4) the board was concerned with whether or not Kyle could successfully physically compete with other older students; and (5) the board was aware that the district had no special programs for gifted students. The board rejected the offer made by the appellants to reimburse the district for the amount of state aid it would not receive if Kyle was admitted.

The record reveals that some school districts in the state admit underage children to kindergarten and that others do not.

We consider the issues of the case to be: (1) Whether the uniformity clause of art. X, sec. 3, requires all school districts to afford exceptional students an opportunity for early admission to kindergarten; and (2) whether this section of the constitution requires that every child in Wisconsin be provided an opportunity to enter public school upon attaining the age of four years.

---

[1] Sec. 121.07(1), Stats., provides for the computation of state aid available to a school district based upon the number of pupils enrolled. Because of Kyle's age, under the provisions of sec. 121.07(1)(a) and (b), the respondents would not be able to count him as an enrolled pupil and thus would receive no state aid related to Kyle's attendance. Those sections provide:

"(a) A first grade pupil may be counted only if he attains the age of 6 years on or before December 1 of the school year in which he enters first grade.

"(b) A pupil enrolled in kindergarten may be counted only if he attains the age of 5 years on or before December 1 of the school year in which he enrolls. A kindergarten pupil shall be counted as one-half pupil."

Additional facts will be stated in our consideration. of these issues.

The appellants contend that if some school districts in the state offer an opportunity for early admission to kindergarten for exceptional students, the uniformity clause requires that all school districts must do so.

The uniformity clause of art. X, sec. 3, is a mandate directed to the legislature to provide for the establishment of district schools, which shall be as nearly uniform as practicable. It is not a mandate directed toward specific district schools or school districts in the sense that they and not the legislature establish the character or extent of uniformity required. That different services, procedures, opportunities or rules exist between districts may well be evidence of a lack of uniformity; but those differences standing alone do not mandate the establishment of identical services, procedures, opportunities or rules in all districts. That determination is made by the legislature or, in a proper case, by this court. The logical extension of the appellants' contention would be that any school district within the state could dictate the character of education, services, opportunities, etc., throughout the state simply by adopting something new or different and thus requiring all other districts to conform. The constitution does not mandate such a result.

The appellants also contend that the early admission procedures for first grade prescribed in sec. 115.28(8), Stats., require that similar procedures be established for kindergarten. In advancing this argument, the appellants rely upon the statutes and case law, and in particular upon the rationale of *Pacyna v. Board of Education,* 57 Wis.2d 562, 204 N.W.2d 671 (1973).

Section 118.14, Stats., provides:

"*118.14 Age of pupils.* No child may be admitted to the 1st grade unless he is 6 years old on or before

December 1 in the year he proposes to enter school. A resident over 20 years of age may be admitted to school when in the judgment of the school board he will not interfere with the pupils of school age."

Section 115.28(8), Stats., establishes an exception to the provisions of sec. 118.14, by providing that:

"*115.28 General duties.* The state superintendent shall:

". . .

"*(8)* ADMISSIONS TO FIRST GRADE. Prescribe procedures, conditions and standards under which admissions to first grade may be made at an age earlier than that specified in s. 118.14 in exceptional cases."

There is no similar statutory provision for early admission to kindergarten. In fact, not all school districts operate, nor are they required to operate, kindergartens, *Pacyna, supra,* pp. 564, 565.

Sec. 120.13(14), Stats., makes the establishment of kindergartens discretionary with the school board, providing:

"*120.13 School board powers.* The school board of a common or union high school district may:

". . .

"*(14)* KINDERGARTEN. In a common school district operating elementary grades or operating elementary and high school grades, establish and maintain a kindergarten. The kindergarten shall constitute a school of the school district and may not be discontinued unless the kindergarten enrollment for the preceding year was less than 15. The school board may discontinue kindergarten classes for 4-year olds."

It appears that pursuant to sec. 115.28(8), Stats., the state superintendent of public instruction has promulgated standards relating to early admission to first grade. Susan Bates, preschool kindergarten consultant for the Wisconsin Department of Public Instruction, testified at the trial. It appears that the superintendent of public instruction took the position that the application of the

standards to kindergarten early admission was only a recommendation; that the standards themselves constituted only recommendations; and that the final authority to grant or refuse early admission to kindergarten rested in the discretion of the respective school boards. The standards were not issued as pertaining to kindergarten; were not distributed as of course to kindergarten-providing districts; and were mailed only on request. The department neither voiced approval nor disapproval of local boards' actions in granting requests for early admission to kindergarten. We believe this to be a proper interpretation and application of the law.

In the exercise of their discretion in determining whether to admit Kyle at an early age, the school board included consideration of those standards. However, the reasoning of *Pacyna v. Board of Education, supra,* does not dictate that Kyle must be granted early admission to kindergarten. *Pacyna* recognized that a child who was six years old before December 1st in the year he proposed to enter first grade must be admitted to first grade. Therefore, it followed, that if a school district operated a kindergarten, uniformity required that a child who was five years old before December 1st in the year he proposed to enter kindergarten must be admitted to kindergarten. "Only by adopting a uniform date for age admission to kindergarten can kindergarten and first grade be integrated." *Pacyna, supra,* 567. *Pacyna* is distinguishable since there is no statutory requirement that children be granted early admission to either first grade or kindergarten.

The appellants here confuse results with opportunity. They appear to argue not only that Kyle be given the opportunity to seek early admission into kindergarten, but also that he, in fact, be admitted.

The actual grant or refusal of early admission is a decision that rests within the discretion of the school board.

Uniformity requires that the potential enrollee be given the opportunity to apply for early admission; that the school board consider the application, and in the exercise of its discretion make its final decision. If the board, in the exercise of its discretion, decides against early admission, that in no way indicates that uniformity has been violated.

On the basis of the record before us, we conclude that the school board exercised its discretion in determining not to admit Kyle as an early kindergarten enrollee. Whether we agree or disagree with the decision of the school board is not the question before us. However, under no circumstances can it be said that the board abused its discretion.

Art. X, sec. 3, of the constitution also provides in part that the district schools established by the legislature ". . . shall be free and without charge for tuition to all children between the ages of 4 and 20 years. . . ." The appellants read this phrase in the constitution as guaranteeing access to public schools for all four-year old children in the state.

Our attention is directed to several authorities from other jurisdictions. We find them unpersuasive because the various constitutional provisions contain different language than our constitution and in several instances the issue involved statutory interpretation.

The two opinions of the attorney general[2] relied upon by the appellants have been affirmatively negated by this court's decision in *Pacyna, supra,* wherein this court stated at 564, 565:

"Art. X, sec. 3, of the Wisconsin Constitution, provides a limitation upon the power and the authority of the legislature in the establishment of district schools. The article requires district schools to be 'as nearly uniform

[2] 10 Op. Atty. Gen. (1921) 5; 10 Op. Atty. Gen. (1921) 231.

as practicable' and to be 'free and without charge for tuition to all children between the ages of 4 and 20 years.' This article does not require the establishment of a kindergarten for four or five-year-old children. . . ."

In *Busé v. Smith,* 74 Wis.2d 550, 247 N.W.2d 141 (1976), this court stated at p. 568:

"In its interpretation of constitutional provisions this court is committed to the method of analysis utilized in *Board of Education v. Sinclair, supra.* [65 Wis.2d 179, 222 N.W.2d 143 (1974)] The court will view:

"(1) The plain meaning of the words in the context used;

"(2) The historical analysis of the constitutional debates and of what practices were in existence in 1848, which the court may reasonably presume were also known to the framers of the 1848 constitution. . . ; and

"(3) The earliest interpretation of this section by the legislature as manifested in the first law passed following the adoption of the constitution. . . ."

One need not delve too deeply into the method of analysis outlined above to arrive at the conclusion that the construction adopted in *Pacyna, supra,* was correct.

The language of art. X, sec. 3, of the constitution, states that the legislature was to establish district schools; that such schools were to be as nearly uniform as practicable; and that such schools were to be free and without charge for tuition to all children between the ages of four and twenty years. There is no specific direction that the schools be open to all children between four and twenty years, or that the schools accommodate all such children, or that education be provided for all such children.

The emphasis of the cited constitutional provision is upon free tuition and not upon a guarantee of education for persons falling within those age groups. *See: Board of Education v. Sinclair,* 65 Wis.2d 179, 222 N.W.2d 143

(1974) ; *State ex rel. Warren v. Reuter,* 44 Wis.2d 201, 221, 170 N.W.2d 790 (1969) ; *Manitowoc v. Manitowoc Rapids,* 231 Wis. 94, 285 N.W. 403 (1939) ; *State ex rel. Comstock v. Joint School District,* 65 Wis. 631, 27 N.W. 829 (1886).

The specific constitutional guarantee of education flows from the provision that the legislature provide for the establishment of district schools. Since the power to establish schools existed without a specific grant as an inherent function of state government (*See: State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 193 N.W. 499 (1923) and *State ex rel. Thomson v. Giessel,* 265 Wis. 558, 61 N.W.2d 903 (1953).) the clear purpose of art. X, sec. 3, was to compel the exercise of the power to the extent designated. *Buse, supra,* 565; *Manitowoc, supra,* 98. Art. X sec. 3, must then be viewed as a limitation upon the broad power of the state to educate its citizens through the establishment and operation of schools. The limitations are precisely stated: District schools, uniformity, and free tuition for certain ages.

There is clearly no limitation which would compel the legislature to provide education each and every year between ages four and twenty, or which would prohibit the legislature from providing education for those under age four and over age twenty. (*See, for instance, State ex rel. Warren v. Reuter, supra,* 221; *West Milwaukee v. Area Bd. Vocational, T. & A. Ed.,* 51 Wis.2d 356, 187 N.W.2d 387 (1971) ; and sec. 120.13 (13), Stats.) The only limitation contained in the constitutional provision relied on by the appellants is that for persons falling within the designated age groups, if education is provided, it must be provided free of charge. *Board of Education v. Sinclair, supra.*

In *Manitowoc, supra,* 98, speaking of the provisions of art. X, sec. 3, this court stated:

". . . The purpose was not to grant a power to the legislature to establish schools, for this power would exist without grant, but to compel the exercise of the power to the extent designated. An implied prohibition cannot be construed out of such materials."

No implied prohibition which would prevent the legislature from determining when the state provided education process will begin and end can be construed out of art. X, sec. 3. The legislature is thus free to determine, as it has done, that entry into first grade will be permitted at age six and that the individual school districts have the option to provide for education in the form of kindergarten before age six. The legislature could determine that education will be provided statewide for all children aged four and above, but the legislature is not constitutionally bound to do so.

The *Journal of the Constitutional Convention* (1847–48), 262, 336–339, indicates that the framers of the contitution, in drafting the pertinent provision of art. X, sec. 3, were concerned with the distribution of the state school fund to achieve free education and not specifically with including or excluding certain ages from school. *See also:* Jorgenson, *The Founding of Public Education in Wisconsin* (1956), 88–93. We further observe that no specific age limit was imposed by the earliest interpretation of this section of the constitution by the legislature as manifest in Ch. 19 of the Revised Statutes of 1849, or during the first ten years following the adoption of the constitution.

We conclude that art. X, sec. 3 of the Wisconsin Constitution does not require all school districts in the state to afford exceptional four-year old children the right to early entry into kindergarten; that the respondents did not abuse their discretion denying the child of the appellants admission; and that the constitution does not require that every child in Wisconsin be able to enter public school upon attaining the age of four years.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J. *(dissenting).* The majority concludes that uniformity requires:

(1) That a child be given the opportunity to apply to kindergarten for early admission;

(2) that the school board consider the application; and

(3) that the school board in the exercise of its discretion make a final decision on the early admission of a child.

The majority further concludes that "the school board exercised its discretion in determining not to admit Kyle as an early kindergarten enrollee" and that "under no circumstances can it be said that the board abused its discretion."

Unfortunately the majority opinion does not set forth the criteria or standards which the school board should or did apply in making its decision. I, therefore, find it difficult to understand how the majority could then review the board's decision and find no abuse of discretion.

The school superintendent set forth his list of five reasons upon which he believed the school board rested its decision (*see* text of the majority opinion at footnote 1). Three reasons on their face could not support the board's decision. One reason given was that the board did not want to set a precedent for other early admission requests. This reason indicates that the board believed it could have a simple, flat rule prohibiting all early admissions. The majority opinion holds otherwise; the court says the board must exercise its discretion on an individual basis. Second, the board rejected the early admission because the district had no special programs for gifted students. This factor is irrelevant in a decision on early admission to kindergarten. The issue was whether this four-year old was sufficiently mature to fit into the regular five-year old kindergarten. The issue was not whether a special program was required for the child.

Third, the board is said to have considered the lack of state aids. State aid is not significant. Sufficiency of funds is. There is nothing in the record showing that the school board considered whether it had sufficient funds or facilities for this child in this kindergarten at this time.

The other two reasons put forth by the superintendent related to the board's concern for the child's social, emotional and physical ability to attend kindergarten. Although these considerations are clearly relevant and could support the board's decision, the record does not show whether the board rested its decision on the individual child's ability or on one or more of the other reasons given or whether its decision would have been the same had one or more of the reasons given been eliminated. *Cf. Snajder v. State,* 74 Wis.2d 303, 316, 246 N.W.2d 665 (1976). Also, it should be noted that Judge Maloney's questioning of the witnesses brought out clearly that the only credible evidence in the record and before the board was that the child was ready for kindergarten. I could find nothing in the record to support a finding that the child was not ready for kindergarten. Nevertheless, the school board, and not this court, should exercise discretion on each child's application, and the school board, not this court, should establish and disseminate to parents in the district the standards and criteria to be applied by the board in reviewing all applications for early admission.

As I write this dissent I am fully aware that the school year is nearly over and the result of this case is therefore substantially meaningless to Kyle, the person most concerned. Nevertheless, for the limited time available to Kyle and for future Kyles, I would remand this case to the board (1) to set forth the standards and criteria for determining admission of children at an early age to kindergarten; (2) to exercise its discretion as to the admission of Kyle in accordance with the established

662

standards and criteria; and (3) to set forth the bases of its decision as to Kyle.

I am authorized to state that Mr. Justice HEFFERNAN joins in this dissent.